2002 WY 4

**Rodolpho P. MUNOZ, Appellant (Defendant),**

v.

**Tencil G. MUNOZ, Appellee (Plaintiff).**

No. 01–64.

Supreme Court of Wyoming.

Jan. 15, 2002.

Rodolpho P. Munoz, Pro Se, Representing Appellant.

Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; Dan S. Wilde, Senior Assistant Attorney General; and Peggy A. Trent, Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Rodolpho P. Munoz (the father) appeals from the district court's order which found him in civil contempt of court for failing to make child support payments and denied his motion to dismiss the order to show cause.  The father claims his constitutional rights were violated when he was twice placed in jeopardy for the same criminal offense because he had previously been found guilty of criminal contempt and sentenced to jail time for failing to pay, in part, the same child support.  We affirm the district court on the basis that the constitutional prohibition against double jeopardy does not apply in this case because the second contempt proceeding was civil in nature and the father was not subjected to successive criminal prosecutions.

## ISSUES

[¶ 2]   The father, appearing *pro se*, presents a somewhat unconventional issue on appeal:

> The double jeopardy constitutional protection attaches when, after being advised of the defendant's rights, the not guilty plea is entered followed by I'm going to release you on your own recognizance while the case is pending.

The Department of Family Services, on behalf of Tencil G. Munoz (the mother), states the issues as follows:

> I.  Is the District Court's order and judgment dated February 16, 2001, finding [the father] guilty of indirect civil contempt for failure to pay child support barred by

double jeopardy based on a previous indirect criminal contempt citation against [the father] on April 21, 1997, for failure to pay child support?

> II.  Did the District Court abuse its discretion in finding [the father] guilty of indirect civil contempt?

## FACTS

[¶ 3]   The district court entered a decree on August 14, 1981, granting the father and the mother a divorce.  The divorce decree incorporated a settlement agreement in which the parties agreed the mother would have custody of the parties' three minor children and the father would pay $250 per month in child support.[1]  The mother assigned her child support rights to the State of Wyoming in exchange for public assistance.  On June 3, 1996, the state filed a motion for an order to show cause and an affidavit in support of the motion, stating the father failed to pay child support in accordance with the divorce decree.  The state claimed that, for the period of July 1981 through April 30, 1996, the father owed $39,129.69 in past due child support.  The district court found the father in contempt of court at a June 12, 1996, hearing and gave him the opportunity to purge himself of the contempt.  The father failed to purge himself of the contempt, and the district court adjudged him guilty of contempt of court.  The court sentenced him to serve five months and twenty-nine days in the county jail.

[¶ 4]   On August 22, 2000, the state filed another affidavit of contempt and a motion for an order to show cause, alleging the father failed to pay child support as required by the divorce decree. The state averred that the father was now delinquent in his child support payments in the sum of $49,379.69 for the period of July 1, 1981, through July 31, 2000.  The district court ordered the father to appear and show cause why he should not be held in contempt of court for failing to comply with the child support order.  The district court employed the proce-

---

1.  Apparently, a fourth child was born to the parties after they were divorced.  The appellate record contains a number of documents pertaining to a case involving this child.  That case has no bearing on our decision herein.

dure set forth in the Wyoming Rules of Criminal Procedure in conducting the father's initial appearance. The father pleaded not guilty to the contempt-of-court charge, and the district court released him on his own recognizance.

[¶ 5] The father filed a motion to dismiss the order to show cause, claiming the second contempt proceeding was barred by the constitutional prohibition against double jeopardy. The district court heard arguments on the father's motion to dismiss just prior to the trial on the contempt charge. The state asserted the father was not exposed to double jeopardy because the second contempt proceeding was civil rather than criminal. The district court agreed with the state and denied the father's motion. The court then proceeded with the trial and found the father in contempt of court. It entered a judgment of arrears in the amount of $49,399.69. The district court ordered the father to make payments of $50 per month on the judgment and to notify the court of his efforts to obtain employment and any changes in his address or telephone number. The father appealed.

### STANDARD OF REVIEW

[¶ 6] Generally, in domestic relations contempt cases, " '[w]e will not disturb the decision of the trial court ... in the absence of some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.' " *Crites v. Alston*, 837 P.2d 1061, 1066 (Wyo.1992) (quoting *Goss v. Goss*, 780 P.2d 306, 313 (Wyo.1989)). In the case at bar, the father presents a constitutional question of law which we review *de novo*. *Burdine v. State*, 974 P.2d 927, 929 (Wyo.1999); *see also Griswold v. State*, 994 P.2d 920, 924 (Wyo.1999).

### DISCUSSION

[¶ 7] Although the father's argument is somewhat difficult to understand, he apparently claims he was twice placed in jeopardy for the same offense when he was prosecuted on two occasions for contempt of court for failing to pay child support. The Department of Family Services maintains the constitutional prohibition against double jeopardy does not apply in this case because the

second proceeding was a civil contempt action.

[¶ 8] Under the Fifth Amendment to the United States Constitution and Article 1, Section 11 of the Wyoming Constitution, a person may not be twice placed in jeopardy for the same criminal offense. The constitutional prohibition against double jeopardy provides three protections to persons accused of crimes: "It protects the accused who has been acquitted against a second prosecution for the same offense; it protects the accused who has been convicted against a second prosecution for the same offense; and it protects the accused against multiple punishments of the same offense." *Amrein v. State*, 836 P.2d 862, 864 (Wyo.1992); *see also Lee v. State*, 2001 WY 129, ¶ 20, 36 P.3d 1133; *Bilderback v. State*, 13 P.3d 249, 253 (Wyo. 2000); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The United States Supreme Court has recognized that nonsummary criminal contempt is a crime for the purposes of a double jeopardy analysis. *See, e.g., International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

[¶ 9] The Department of Family Services concedes the 1996 proceeding involved a criminal contempt. A second prosecution for criminal contempt involving failure to make child support payments from 1981 through 1996 would, therefore, be barred by the United States and Wyoming Constitutions. The second contempt proceeding encompassed a longer time frame (1981 through 2000) which overlapped the time frame of the first criminal contempt conviction. Consequently, we must determine whether the second proceeding against the father involved a criminal contempt of court or a civil contempt of court.

[¶ 10] We distinguish between criminal contempt and civil contempt by determining the purpose of the contempt order. *Anderson v. Anderson*, 667 P.2d 660, 662 (Wyo.1983); *Horn v. District Court, Ninth Judicial District*, 647 P.2d 1368, 1372–73 (Wyo.1982). The purpose of a civil contempt

is to coerce a party into complying with a prior court order, while the purpose of a criminal contempt is to punish a party who failed to comply with a prior order. *GN v. State (In re C.N.)*, 816 P.2d 1282, 1285 (Wyo. 1991); *Horn*, 647 P.2d at 1373. In other words: "If the penalty is intended to operate in a prospective manner so as to bring about compliance with an order of the court, then it relates to civil contempt. If, however, the penalty is unconditional and imposed to vindicate a prior transgression against the court, then criminal contempt is involved." *Anderson*, 667 P.2d at 662 (citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

[¶ 11] In *United Mine Workers of America, Local 1972 v. Decker Coal Company*, 774 P.2d 1274, 1280 (Wyo.1989), we summarized Wyoming case law pertaining to contempt and identified certain factors which may be considered in determining whether a contempt is civil or criminal:

1. In what manner did the contempt happen, that is, did the contemnor refuse to do an affirmative act or did the contemnor do that which he was ordered not to do;

2. what was the substance of the proceeding;

3. what kind of punishment was imposed; and

4. for what reasons did the court impose that kind of punishment.

In the case at bar, the contempt proceeding was initiated by the State of Wyoming because the father did not pay child support in accordance with the district court's earlier order. Thus, the alleged contemptuous conduct was the father's refusal to perform an affirmative act which had previously been ordered by the district court. This factor suggests the action was civil rather than criminal.

■ [¶ 12] The substance of the contempt action is determined by looking at the course of proceedings in the case. *See United Mine Workers*, 774 P.2d at 1280–81. The state filed a motion for an order to show cause, and the district court issued a show cause order. The district court conducted the contempt proceeding by utilizing the procedure set forth in W.R.Cr.P. 42(c). At the January 4, 2001, hearing, the state declared the purpose of its motion was to collect past due child support. The state's attorney stated:

> Your Honor, the state's argument is simply that I want to make it very clear that the state is bringing its action for contempt as an indirect civil contempt of court. And that can be distinguished from a criminal contempt of court in that [the father] would have the ability to purge himself of contempt if indeed this Court finds him to be in contempt of court for failing to pay support as ordered.
>
> I want to make clear to the Court that I am not going to be requesting jail time at this hearing. . . .

[¶ 13] The father claims that, because the district court followed the procedure set forth in W.R.Cr.P. 42, the proceeding was criminal in nature. He is, however, mistaken. The Wyoming Rules of Criminal Procedure expressly recognize the possibility of imposing either criminal or civil sanctions for contempt of court. W.R.Cr.P. 42, 42.1. W.R.Cr.P. 42.1(b) states in relevant part: "If, after notice and hearing, the court finds that a person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in civil contempt of court." Under the clear language of this rule, the fact that the district court afforded the father the protections and advisements provided by the Wyoming Rules of Criminal Procedure does not automatically render the proceeding criminal in nature. Rather, our review of the course of proceedings in this case confirms the contempt action was intended to force the father to comply with the child support order rather than to punish him for his noncompliance. This factor suggests civil contempt.

[¶ 14] We will consider the last two factors outlined in *United Mine Workers* together; i.e., the kind of punishment imposed and the reasons for the punishment. The district court found the father in contempt of court and reduced the child support arrearage to a judgment. It ordered the father to pay $50 per month toward satisfying the

judgment. The district court also ordered him to provide proof of his efforts to find employment and to notify the court of any changes in his employment, address, or telephone number. The obvious purpose of the district court's contempt order was to force the father to pay his past due child support. These factors weigh in favor of finding the character of the contempt proceeding was civil.

[¶ 15] Our application of the *United Mine Workers* factors to this case reveals that the dominant characteristic of the second contempt proceeding was remedial rather than punitive. When a court is seeking to force the contemnor to comply with a prior court order rather than to punish him, the contempt is civil and not criminal in nature. *GN*, 816 P.2d at 1285; *Horn*, 647 P.2d at 1373. The constitutional prohibition against double jeopardy was not implicated in this case because the father was not subjected to successive criminal prosecutions for the same offense. *See Amrein*, 836 P.2d at 864; *Dixon*, 509 U.S. at 696, 113 S.Ct. 2849. The district court did not violate the father's constitutional rights.[2]

[¶ 16] Affirmed.

---

**2.** The father limited his appellate argument to the constitutional issue. We will not, therefore, address the Department of Family Service's second issue in which it argues that the district court did not abuse its discretion when it found the father guilty of indirect civil contempt of court.