2010 WY 129

**Harry E. STEPHENS, Appellant (Plaintiff),**

v.

**Gregory D. LAVITT and Debra C. Lavitt, Appellees (Defendants).**

**No. S–10–0014.**

Supreme Court of Wyoming.

Sept. 23, 2010.

Representing Appellant: Frank J. Jones, Wheatland, Wyoming.

Representing Appellees: Mitchell H. Edwards of Nicholas & Tangeman, LLC, Laramie, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   Harry E. Stephens appeals from the district court's order adjudging him in contempt of court for violating an injunction that required him to lock a gate on his easement across property owned by Gregory D. and Debra C. Lavitt (Lavitts).  The district court terminated Mr. Stephens' easement as a sanction for the contempt.  He claims the district court did not have jurisdiction over a criminal contempt because it was not commenced in a separate case and, in any event, the court should not have extinguished his easement.  We affirm on the grounds that the contempt was civil rather than criminal in nature and termination of his easement across the Lavitts' property was a reasonable remedy under the circumstances of this case. We conclude, however, that the district court abused its discretion by terminating Mr. Stephens' easement across properties other than the Lavitts' and, accordingly, reverse that portion of the order.

### ISSUES

[¶ 2]   The parties raise various issues on appeal, but we have identified the following issues as dispositive:

1.  Was the contempt proceeding criminal in nature, in which instance the district court did not have jurisdiction over the action because it was not brought as a separate case; or, was it civil in nature, so that the district court had jurisdiction under the original case?

2.  Did the district court abuse its discretion by declaring forfeiture of Mr. Stephens' easement to remedy his violation of its injunction and misuse of the easement?

* Chief Justice at time of oral argument.

## FACTS

[¶ 3]   Mr. Stephens and the Lavitts own mountain property in Albany County, Wyoming.   Historically, Mr. Stephens accessed his property by using two routes—Luman Road which traverses the Lavitts' property,[1] or Mart Miller Road. In 2001, the Lavitts placed a locked gate across the road on their property to prevent unwanted access by the public and to avert acts of vandalism.   Mr. Stephens was provided with a key to the lock so he could access his property.

[¶ 4]   Mr. Stephens and his family members became dissatisfied with the locked gate, and, in 2007, he commenced a declaratory judgment action seeking a ruling that he had a valid easement along Luman Road and an injunction prohibiting the Lavitts from interfering with his access by placing a locked gate across the road. The Lavitts counterclaimed for a declaration that Mr. Stephens did not have a legal easement or, if he did have an easement, it had been terminated by his misuse.   They also sought injunctive relief prohibiting him from entering or damaging their property.

[¶ 5]   The district court held a hearing on the competing claims for a temporary restraining order and granted the Lavitts' request by prohibiting Mr. Stephens from entering their property while the action was pending.   The Lavitts subsequently alleged that Mr. Stephens had violated the temporary restraining order on several occasions.

[¶ 6]   In the meantime, the district court granted summary judgment in favor of Mr. Stephens declaring that he had a valid appurtenant easement across the Lavitts' property on Luman Road. The court concluded there were genuine issues of material fact as to whether Mr. Stephens had misused the easement and "what reasonable conditions may be placed on the use of the easement."

[¶ 7]   The district court conducted a bench trial on the outstanding issues, including whether Mr. Stephens had violated the temporary restraining order.   The court ruled

that Mr. Stephens had violated the restraining order but sanctions were not imposed at that time.   It also concluded that the locked gate was reasonable and necessary for the Lavitts' use, enjoyment and protection of their property.   The district court ordered Mr. Stephens to lock the gate immediately after his access and prohibited him from leaving the gate unlocked.   It also permanently enjoined him from venturing off the easement or harassing the Lavitts.

[¶ 8]   On June 11, 2009, the Lavitts filed a motion for order to show cause as to why Mr. Stephens should not be found in contempt of court for violating the court's prior order by failing to lock the gate and stamping the combination on the lock so that anyone could open it.   They also alleged that Mr. Stephens had harassed and intimidated them.   The district court issued an order to show cause, held a hearing and issued the following findings of fact, conclusions of law and judgment of contempt:

> This action came before the Court on September 1, 2009. . . . The Court advised Mr. Stephens as required by law in a hearing for Criminal Contempt, and then heard testimony and evidence.   The Court makes the following findings beyond a reasonable doubt:
>
> 1.   On September 25, 2008, the Court entered an Order which placed the following requirements on [Mr. Stephens]:
>
>> a.   [Mr.] Stephens and his guests who access the Luman [R]oad shall close and lock the Gate immediately following such access, and shall not leave the Gate open or unlocked and unattended.
>>
>> b.   [Mr.] Stephens . . . (is) hereby PERMANENTLY ENJOINED AND RESTRAINED . . . from in any way harassing or intimidating [the Lavitts] . . . and from violating (the above restrictions about locking the gate).
>>
>> c.   [Mr.] Stephens shall use the Luman [R]oad easement only after placing his own lock on the gate. . . .

---

1.  Luman Road crosses properties belonging to people besides the Lavitts.  Although other landowners participated in the underlying action, they did not join in the contempt proceeding.

We will generally refer to these landowners as "the Lavitts" unless there is reason to separately identify them.

2. Before September 25, 2008, [Mr.] Stephens had violated this Court's Order by cutting locks off the gate and had been convicted in Circuit Court for failure to close the gate.

3. On April 28, 2008, July 21, 2008, and during the first week of August, 2008, [Mr.] Stephens violated this Court's Order by cutting the lock and entering the easement.

4. After September 25, 2008, [Mr.] Stephens put his own lock on the gate, in compliance with the Court's Order. That lock was a combination lock.

5. In February 2009, [Mr.] Stephens stamped the lock combination on his lock, so it could be plainly seen.

6. [Mr.] Stephens claims he placed the combination [o]n the lock because he could not remember it. The Court finds this testimony without any credibility. [Mr.] Stephens' demeanor, his memory of other items, the availability of other means to "remember" the combination and his attitude about the gate and lock all indicate that [Mr.] Stephens stamped the combination on the lock so the public could see it, and to circumvent the Court's Order.

7. When a neighbor called [Mr.] Stephens and suggested that [Mr.] Stephens should change the lock, [Mr.] Stephens refused and stated he was "so mad it makes me want to shoot someone."

8. [Mr.] Stephens states that he intends to fight the gate as long as he lives.

9. Although [Mr.] Stephens now states he will keep the gate locked, his testimony in this regard is not credible.

10. [Mr.] Stephens' act of stamping the combination on his lock is in direct violation of the Court's Order. A combination lock with the combination stamped on it is not a lock at all.

11. [Mr.] Stephens' statements about wanting to shoot someone demonstrate his attitude, but do not constitute harassment of [the Lavitts] because those statements were not directed to [them].

12. The Court is unable to enter an Order that will permit [Mr.] Stephens to use the Luman Road and accomplish the gate being locked, because [Mr.] Stephens has demonstrated his refusal to comply with such an Order.

13. [Mr.] Stephens' violation of the Court's Order constitutes misuse of his easement on Luman Road sufficient to cause forfeiture of that easement.

**IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED and DECREED** that [Mr.] Stephens is in Criminal Contempt of this Court for failure to comply with this Court's Order to lock the gate.

**IT IS FURTHER ORDERED** that as a consequence of such Contempt, the Court declares [Mr.] Stephens' easement on Luman Road to be forfeited and terminated.

**IT IS FURTHER ORDERED** that the permanent injunction of September 25, 2008, is modified to prohibit [Mr.] Stephens, his agents, guests, employees and/or representatives from using the Luman [R]oad.

Mr. Stephens filed a notice of appeal.

## DISCUSSION

### 1. Nature of Contempt Proceeding

[¶ 9] Mr. Stephens argues the contempt proceeding was criminal in nature, and the district court did not have jurisdiction because it was not brought in a separate, independent action. *See, e.g., BW v. State,* 2010 WY 18, ¶ 5, 226 P.3d 272, 274 (Wyo. 2010); *Swain v. State,* 2009 WY 142, ¶¶ 13–17, 220 P.3d 504, 507–09 (Wyo.2009). The Lavitts counter that the contempt proceeding was civil and the district court had jurisdiction to hear it as part of the original case. " 'Whether a court has jurisdiction is a question of law to be reviewed *de novo.*' " *Hamilton v. Hamilton,* 2010 WY 35, ¶ 5, 228 P.3d 51, 52 (Wyo.2010), quoting *SEG v. GDK,* 2007 WY 203, ¶ 4, 173 P.3d 395, 395 (Wyo.2007).

[¶ 10] In *Swain,* ¶¶ 13–17, 230 P.3d at 507–09, we stated that a criminal contempt proceeding is "between the public and the contemnor and is a separate and independent proceeding from, and is not a part of, the original case in which the con-

tempt arose-it is instituted, tried and treated as a distinct criminal action." *Id.*, ¶ 14, 230 P.3d at 508, citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). A district court does not have jurisdiction over a criminal contempt proceeding unless it is brought as a separate action, in the name of the state. Any criminal contempt order issued in an action not properly commenced is null and void. *Swain*, ¶ 14, 230 P.3d at 508. In contrast, a civil contempt proceeding is a dispute between the original parties and is "instituted, tried and treated as a part of the main case." *Id.*

[¶ 11]   In *Munoz v. Munoz*, 2002 WY 4, ¶ 11, 39 P.3d 390, 393 (Wyo.2002), we identified four factors that may be considered in determining the nature of a contempt proceeding:

> 1.   In what manner did the contempt happen, that is, did the contemnor refuse to do an affirmative act or did the contemnor do that which he was ordered not to do;
>
> 2.   what was the substance of the proceeding;
>
> 3.   what kind of punishment was imposed; and
>
> 4.   for what reasons did the court impose that kind of punishment.

[¶ 12]   Analyzing the first factor, if the contemnor refuses to do an affirmative act previously ordered by the court, the proceeding is considered to be civil; if the contemnor does something he was ordered not to do, the proceeding is criminal. *Id. See also, United Mine Workers of America, Local 1972 v. Decker Coal Co.*, 774 P.2d 1274, 1280 (Wyo.1989), superseded on other grounds by rule as recognized by *CRB v. State, Dept. of Family Services*, 974 P.2d 931, 936 (Wyo.1999). The Lavitts' motion to show cause alleged both a failure to perform an affirmative action previously ordered by the district court (lock the gate) and the doing of an act which was prohibited (harassing them). The district court, however, found Mr. Stephens in contempt only for failing to lock the gate. The court held the evidence did not establish that Mr. Stephens had harassed the Lavitts. On the whole, this factor indicates the contempt proceeding was civil.

[¶ 13]   The substance of a contempt proceeding is determined by analyzing the course of proceedings. Mr. Stephens apparently assumes the contempt proceeding was criminal because the district court proceeded under W.R.Cr.P. 42. The process set out in Rule 42 follows typical criminal law procedure. However, in *Munoz*, ¶ 13, 39 P.3d at 393, this Court rejected the notion that a proceeding will always be considered criminal if the district court proceeds under Rule 42. We explained that W.R.Cr.P. 42 and 42.1 expressly recognize the possibility of imposing either criminal or civil sanctions for contempt of court. W.R.Cr.P. 42.1(b) states in relevant part: "If, after notice and hearing, the court finds that a person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in civil contempt of court . . . ." The fact that the district court provided the accused contemnor with the protections and advisements provided by the Wyoming Rules of Criminal Procedure does not automatically render the proceeding criminal in nature. *Munoz*, ¶ 13, 39 P.3d at 393.

[¶ 14]   Although the district court referred to the contempt action as criminal and utilized criminal procedure, the course of proceedings in this case demonstrates that the proceeding was civil. The action was brought by a private party, rather than the state, to enforce compliance with the protections provided in the injunction.

[¶ 15]   The third and fourth factors address the type of punishment imposed and the district court's reasons for imposing the punishment and are often denominated as the principal considerations in determining whether a contempt proceeding is criminal or civil. *Horn v. District Court, Ninth Judicial District*, 647 P.2d 1368, 1372-73 (Wyo.1982). We expounded on the punishment element in *Horn v. Welch*, 2002 WY 138, ¶ 12, 54 P.3d 754, 759 (Wyo.2002):

> A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not

intended as a deterrent to offenses against the public. *Horn,* 647 P.2d at 1373. A civil contempt is generally intended to compel a party to comply with a lawful court order while a criminal contempt is punitive in nature and is enforced so the authority of the law and the court will be vindicated. *Id.* Stated simply, the primary purpose of criminal contempt is to punish while the primary purpose of civil contempt is to coerce. *Anderson v. Anderson,* 667 P.2d 660, 662 (Wyo.1983); *Horn,* 647 P.2d at 1373. Appellate courts are obligated to decide whether a contempt is civil or criminal based on the reasons for a particular penalty. *Id.*

[¶ 16] The permanent injunction was focused on compelling Mr. Stephens to act properly on the easement, including keeping the gate locked. The Lavitts' motion to show cause alleged that Mr. Stephens had violated the injunction and prayed that the court would permanently enjoin Mr. Stephens from entering their property. The district court reviewed the history of Mr. Stephens' refusal to comply with its orders and succinctly and clearly explained its rationale for terminating Mr. Stephens' easement:

12. The Court is unable to enter an Order that will permit [Mr.] Stephens to use the Luman Road and accomplish the gate being locked, because [Mr.] Stephens has demonstrated his refusal to comply with such an Order.

13. [Mr.] Stephens' violation of the Court's Order constitutes misuse of his easement on Luman Road sufficient to cause forfeiture of that easement.

Unquestionably, the reason the district court imposed the punishment of forfeiture of the easement was to enforce its order that the gate should be locked. The purpose of its order was to remedy the harm done to the Lavitts rather than to protect the public or punish Mr. Stephens.

[¶ 17] The punishment factors, like the others, confirm that the action was civil in nature. It was, therefore, properly brought under the original docket number, as a private matter between the original parties. The district court had jurisdiction to entertain the action.

**2. Remedy**

[¶ 18] Mr. Stephens also challenges the remedy imposed by the district court for his violation of the permanent injunction—extinguishment of his easement on Luman Road. A court has the inherent power to punish contempts of court and discretion to determine what sanction is appropriate. We will not intrude upon a district court's contempt order unless the appellant shows a clear and grave abuse of discretion. *Greene v. Finn,* 2007 WY 47, ¶ 5, 153 P.3d 945, 948 (Wyo.2007). In determining whether the district court abused its discretion, we consider whether it "could have reasonably concluded as it did." *Horn,* ¶ 8, 54 P.3d at 758.

[¶ 19] Mr. Stephens' argument that the remedy was unauthorized assumes that the contempt proceeding was criminal in nature. He offers no cogent analysis regarding whether forfeiture of the easement was a proper sanction for civil contempt or misuse of the easement. Wyo. Stat. Ann. § 1–28–107 (LexisNexis 2009) and Rule 42.1 provide broad powers for a court to enforce its orders with civil sanctions. Section 1–28–107 states:

An injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience may be punished by the court as a contempt. An attachment may be issued against the disobedient party upon satisfactory showing by affidavit of the breach of the injunction or restraining order. The disobedient party may be required by the court or judge to pay a fine not exceeding two hundred dollars ($200.00), to make immediate restitution to the party injured and to give further security to obey the injunction or restraining order. In default thereof, he may be committed to custody until he complies with the requirements or is otherwise legally discharged. Fines collected under this section shall be paid to the state treasurer and credited as provided in W.S. 8–1–109.

Rule 42.1 outlines non-exclusive coercive and compensatory remedies.

[¶ 20] In addition to finding that Mr. Stephens was in contempt of court for violating its injunctive order, the district court also ruled that Mr. Stephens' violation of the injunction amounted to misuse of the easement sufficient to justify forfeiture. It is a basic precept of our law that forfeitures are abhorred. *See, e.g., Walker v. Graham*, 706 P.2d 278, 281–82 (Wyo.1985); *Younglove v. Graham & Hill*, 526 P.2d 689, 692 (Wyo. 1974). Although this tenet applies in the context of easements, there is authority that forfeiture of an easement may be ordered in the face of significant misuse of the servient property by the dominant owner. "Use of an easement for an unauthorized purpose, or excessive use or misuse of it, is not sufficient to cause a forfeiture of the easement, unless the misuse of the easement is willful and substantial and not merely minor or technical." 25 Am.Jur.2d *Easements and Licenses* § 99 (2010) (footnotes omitted). In *Frenning v. Dow*, 544 A.2d 145, 146 (R.I.1988), the Rhode Island Supreme Court stated that "[g]enerally courts have not favored extinguishing an easement unless injunctive relief would be ineffective to relieve the servient tenement."

[¶ 21] While the remedy was onerous, under the specific facts of this case, we are not convinced the district court abused its discretion by ordering forfeiture of the easement to remedy Mr. Stephens' violation of its injunctive order and misuse of the easement. It had governed this case for several years and witnessed Mr. Stephens' continued refusals to comply with its orders. The district court conducted the contempt proceeding and was unconvinced by Mr. Stephens' representation that, at that late date, he would finally comply with the court's order. We defer to the district court's findings of witness credibility. *Pond v. Pond*, 2009 WY 134, ¶ 9, 218 P.3d 650, 652 (Wyo.2009).

[¶ 22] The evidence demonstrated that Mr. Stephens' misuse of the easement was willful and substantial and further injunctive relief would not have been effective in relieving the servient estate. *See*, 25 Am.Jur.2d *Easements and Licenses* § 99; *Frenning*,

544 A.2d at 146. Moreover, Mr. Stephens can still access his property by using the Mart Miller Road, although that road traverses more difficult terrain and requires more maintenance. The district court did not abuse its discretion by ordering termination of the easement over the Lavitts' property under the particular circumstances presented here.

[¶ 23] The district court's order also extinguished Mr. Stephens' easement over property belonging to landowners who were not parties to the contempt proceedings. Considering that we have determined that this was a civil contempt proceeding between the Lavitts and Mr. Stephens, the district court abused its discretion by extinguishing Mr. Stephens' easement over lands owned by persons who were not parties to the contempt proceeding. *See, e.g., Horn*, ¶ 12, 54 P.3d at 759 (holding punishment for a civil contempt "serves only the purposes of the complainant"). We, therefore, reverse that aspect of the contempt order.[2]

[¶ 24] Affirmed in part and reversed in part.

---

**2.** As a practical matter, the remaining portions of Mr. Stephens' easement are not usable. Since

he cannot cross the Lavitts' property, he will not be able to access his property from Luman Road.