**IN THE SUPREME COURT, STATE OF WYOMING**

**2016 WY 73**

**APRIL TERM, A.D. 2016**

**July 20, 2016**

JLK,

Appellant
(Respondent),

v.

S-15-0292

MAB,

Appellee
(Petitioner).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*
    J. Craig Abraham, Gillette, WY.

*Representing Appellee:*
    Molly R. Hoon-Hanks of Lonabaugh and Riggs, LLP, Sheridan, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    JLK (Mother) and MAB (Father) have a child together.  They share custody of the child pursuant to an Order on Child Custody, Visitation and Support (Custody Order), which provides for the parties to alternate custody on a weekly basis until the child reaches school age.  To address Mother's concerns regarding Father's alleged drug use, the Custody Order allows Mother to make one request per month that Father submit to a drug test.  Father is required to take the test within twenty-four hours of receiving the request.  If the test is positive for the presence of drugs, he forfeits his next weekly visitation.  If the drug test is negative, Mother must reimburse Father for the cost of the test before she may make another request.

[¶2]    A dispute arose between Mother and Father concerning the testing, and Father filed a show cause motion alleging that Mother had violated the order by failing to allow him his visitation and reimburse him for a negative test.  Mother responded with her own show cause motion alleging that it was Father who violated the drug testing requirement.  The district court denied Mother's motion, granted Father's motion, and ordered Mother to pay Father's attorney fees and costs, as well as the costs of the negative drug test.  We affirm in part and reverse in part.

## ISSUES

[¶3]    Mother presents a single issue for our review: whether the district court erred in finding Mother violated the custody order.  In arguing that issue, however, Mother contends that the district court's ruling was in error because it was Father who violated the order.  For clarity, we therefore address Mother's appeal as presenting two separate issues:

> 1)      Whether the district court erred in finding that Father did not violate the Custody Order's drug testing provisions.
> 2)      Whether the district court erred in finding Mother in contempt of court for her violation of the Custody Order.

[¶4]    Father alleges on appeal that Mother has not purged herself of the contempt found by the district court and presents as an additional issue the question whether this Court should dismiss Mother's appeal and assess sanctions in the form of attorney fees and costs for Mother's failure to purge herself of the contempt.

## FACTS

[¶5]    On January 1, 2012, a child, CRB, was born to Mother and Father in Gillette, Wyoming.  On June 22, 2012, the Sixth Judicial District Court, Campbell County, entered a Stipulated Judgment and Order Establishing Paternity and Support.  The order

1

established Father's paternity and set his child support obligations. On February 11, 2013, Father filed a petition to establish child custody and visitation, by which he sought primary custody of CRB, subject to Mother's reasonable visitation, as well as a corresponding modification of child support.

[¶6] On February 3, 2015, the district court held a hearing on Father's petition. At the close of evidence and after hearing closing arguments, the court issued an oral ruling. The court ordered that the parties alternate custody of CRB on a weekly basis until she reaches school age, at which time Father would then have primary custody of the child, subject to Mother's reasonable visitation. To address allegations by Mother that Father used illegal drugs, the court commented and ruled:

> Now, on visitation, and this is a little bit different, but as I say, the Court's a little bit skeptical, skeptical about [Father's] claims to have been drug-free since 1997. Now, he may be of the view that that's exactly how it was. And arguably, the testimony of Ms. Faye and Ms. Draper was motivated by disaffection with [Father]. I mean after all, he was married to Ms. Faye and then he wasn't and she claimed he was carrying on with Ms. Draper; and who knows. And they were friends, they were witnesses for [Mother], so maybe they ginned this whole thing up, I don't know. But arguably, mom has a comfort level that needs to be met here on that front, and I'm going to try and accomplish that in this way. This is a little bit different, and I hope this works. Let me ask dad first, the outfit where he got his drug test, is that open seven days a week or just five days a week, do we know?
>
> > [Father's Counsel]: He may be able to say.
> > [Father]: I believe it's five days a week. I never asked.
> > THE COURT: All right. That's all I need to know. Here's the Order: Mom is going to have the right, one time per month, to require dad to submit to a five-panel drug test within 24 hours of her request being made, so long as that can be accomplished, mom, within the business hours of the outfit that's doing the testing, and right now it's Occupational Testing, it might be some other outfit down the line. And if the test is negative, mom will have to pay the cost of the test. If it's positive, then dad not only will have to pay the cost of the test, but he will lose his next week-long period of custody in the preschool era, and once the child is in school, he will

2

have to yield two additional weekends in the month following to mom for visitation.

* * * *

[Father's Counsel]: Can I ask one more question about the drug testing?  Does mom need to submit a request in writing, or an oral request is fine?

THE COURT:  Well, that's a good question.  I thought of that when I announced the Order.  And people these days, they text each other.  And as long as mom can prove she made the request and dad received it, I think that's a little bit easier than having some highly defined method of communication.  What do you think, [Mother's Counsel]?

[Mother's Counsel]: I think there has to be some type of actual notice, just actual notice.  You know, it can['t] be he said she said, but text messages or something, it's going to be up to [Mother] to request it in a way that she can verify that the request was made.

THE COURT:  That's the point I was trying to make.  I don't want to hamstring people.

[Father's Counsel]:  All right.  So as long as there was notice that she can demonstrate?

THE COURT:  Right.  And the request can be made one time a month.

[¶7]   On March 27, 2015, the district court entered its written Custody Order.  The Custody Order memorialized the drug testing requirement as follows:

13.  **<u>Drug Testing.</u>**  Mother shall be permitted to request that Father submit up to one five-panel drug test each calendar month.  Upon request from Mother, in a method that can be objectively demonstrated (e.g. text message, note passed through CASA, etc.), Father shall submit to a five-panel drug test within twenty-four (24) hours so long as a drug testing facility in the community is open and able to perform such a test within that period.  If the result of Father's drug test is negative, Mother shall be required to reimburse Father for the expense of the test within twenty (20) days of receiving the results and invoice from Father.  If Mother is delinquent on reimbursing Father for expenses of the past drug tests, she will not be permitted to request another drug test until such delinquency has been remedied.  If Father fails to take the drug test or the result of the drug test is positive, Father shall be responsible for the cost of the drug

3

test, and custody and visitation with the child shall be effected (sic) as follows:

> a. *Prior to the Child Beginning Kindergarten.* Father shall forfeit his next one (1) week visitation period with the child, and Mother shall be entitled to custody during that time.
>
> b. *After the Child Begins Kindergarten.* In the month immediately following the positive drug test, the child shall spend time with Mother on the first two weekends of the month where Friday is an even-numbered day. Mother's weekend visitation shall begin at 5:00 p.m. on Friday and shall end at 5:00 p.m. on Sunday. This shall be in addition to Mother's regular weekend visitation provided for in paragraph 3.a above.

[¶8] The parties' dispute over the Custody Order's drug testing requirement began shortly after the order's entry. On April 6, 2015, Mother sent Father a text message requesting that he submit to a drug test. Father received the text message on April 9, 2015, and on the morning of April 10, 2015, he took the required drug test and provided the negative test results to Mother through a CASA representative.[1] CASA thereafter notified Father that it was Mother's position that Father had failed to take the requested drug test within twenty-four hours of her text message and therefore refused to bring CRB for Father's visitation scheduled to begin on April 12, 2015. Because of the discrepancies between the date Mother texted Father and the date Father received the text, Father requested, through a CASA representative and through his attorney, that Mother agree to submit testing requests through CASA. Father did not receive a response to his request.

[¶9] On Friday, May 8, 2015, at 4:30 p.m., Mother sent a text message to Father requesting that he take another drug test. Father received the text message at 11:17 p.m. on Saturday, May 9, 2015. Father did not take the requested drug test because he did not know of a testing facility that would do the testing on a weekend and because Mother had not reimbursed him for the negative test he took in April. Father's visitation was to begin on May 10, 2015, and Mother again refused to allow Father that visitation.

---

[1] CASA stands for Court Appointed Special Advocates Program and is a program that provides volunteers to serve as court appointed special advocates to represent the best interests of a child in abuse and neglect cases. Wyoming Rules of Procedure for Juvenile Courts, Rule 8 (LexisNexis 2015). CASA programs also sometimes offer services as a neutral forum or intermediary to facilitate child visitation and communication between parties to a custody order. *See Gjertsen v. Haar*, 2015 WY 56, ¶¶ 6-7, 347 P.3d 1117, 1121 (Wyo. 2015).

[¶10] On May 20, 2015, Father filed a motion for order to show cause alleging Mother was in contempt of court for refusing to allow Father visitation as directed by the Custody Order. Through his motion, Father requested that he be permitted an additional two weeks of visitation with CRB to make up for the visitation he was denied. Father further requested that the Court amend the Custody Order to require that Mother submit all future testing requests through CASA and that he be awarded attorney fees and costs pursuant to the Custody Order's fee-shifting provision.

[¶11] In response to Father's show cause motion, Mother filed her own show cause motion alleging Father should be held in contempt of court for violating the custody order by: failing to provide the clerk of court, CASA, and Mother with a working telephone number and mailing address; keeping the telephone on which he was to receive drug testing requests turned off to control the date on which he received requests; and failing to comply with drug testing requests in April and May 2015. Mother requested that Father be required to submit to hair follicle testing and that she be awarded attorney fees and costs incurred in bringing her show cause motion.

[¶12] On August 18, 2015, the district court held an evidentiary hearing on both show cause motions. The court issued an oral ruling finding Mother had willfully violated the Custody Order and finding no violation of the order by Father, which was followed by a written order entered on September 25, 2015. The court granted Father's request for two extra weeks of visitation and ordered Mother to reimburse Father for his April 2015 drug test, but it denied Father's request to have all drug testing requests submitted through CASA.[2] The court also on September 25, 2015, issued an Order Granting Attorney's Fees and Costs, by which it awarded Father $2,100.00 in attorney fees.

[¶13] On October 22, 2015, Mother filed a notice of appeal to this Court in which she identified the order appealed as the "Order After Hearing on Petitioner's Motion for Order to Show Cause and Respondent's Motion for Order to Show Cause." Mother did not file a notice of appeal from the Order Granting Attorney's Fees and Costs.

## STANDARD OF REVIEW

[¶14] We apply the following standard in reviewing a court's exercise of its contempt power:

> This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Roberts v.*

---

[2] The court denied the request to involve CASA because the parties had for the three months preceding the hearing been successful in dealing with the drug testing requests via text message and the court did not want to interfere with a system that was currently working.

> *Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo.2013).
> *See also Munoz v. Munoz*, 2002 WY 4, ¶ 6, 39 P.3d 390, 392
> (Wyo.2002); *Olsen v. Olsen*, 2013 WY 115, ¶ 33, 310 P.3d
> 888, 896 (Wyo.2013). In reviewing the exercise of a district
> court's broad discretion under its contempt powers, we must
> determine whether the court reasonably could have concluded
> as it did. *Roberts*, ¶ 14, 304 P.3d at 120, citing *Stephens v.
> Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo.2010).

*Bullock v. Bullock*, 2014 WY 131, ¶ 14, 336 P.3d 136, 140 (Wyo. 2014) (quoting *Shindell v. Shindell*, 2014 WY 51, ¶ 7, 322 P.3d 1270, 1273 (Wyo. 2014)); *see also Breen v. Black*, 2015 WY 96, ¶ 22, 353 P.3d 725, 730 (Wyo. 2015).

[¶15] We also recognize that this Court may affirm a district court's ruling on any basis appearing in the record. *Magin v. Solitude Homeowner's Inc.*, 2011 WY 102, ¶ 20, 255 P.3d 920, 927 (Wyo. 2011); *Olsen v. Kilpatrick*, 2007 WY 103, ¶ 10, 161 P.3d 504, 507 (Wyo. 2007); *Walker v. Karpan*, 726 P.2d 82, 89 (Wyo. 1986) ("This court will affirm rulings of the district court for any proper reason appearing of record, even if the articulated reasons are incorrect.").

## **DISCUSSION**

### A. **Father's Request for Dismissal of Appeal and Other Sanctions**

[¶16] This Court has held that where a party "is charged with contempt and makes no meaningful, good faith effort to comply with the order on which the contempt citation is based, we will likely dismiss the appeal." *Jessen v. Jessen*, 802 P.2d 901, 903 (Wyo. 1990) (citing *Connors v. Connors*, 769 P.2d 336, 342 (Wyo. 1989)). Citing this authority, Father asks us to dismiss Mother's appeal and impose sanctions against Mother, including fees and costs on appeal, because she has not paid Father for the negative drug test he took in April 2015 and has not paid Father's attorney fees as the district court ordered. We deny this request.

[¶17] First, with regard to the attorney fees order, that order was separate from the district court's contempt order, was not appealed, and is not before this Court for review. If Mother has failed to comply with the fees order, Father's remedy is to seek enforcement of the order in district court rather than dismissal of Mother's appeal. *See Greene v. Finn*, 2007 WY 47, ¶ 9, 153 P.3d 945, 950 (Wyo. 2007) (rejecting dismissal of appeal as remedy for party's failure to file supersedeas bond).

[¶18] With regard to the failure to pay the costs of Father's negative drug test in April 2015, we have no record before us showing that Mother has failed to make a meaningful and good faith effort to comply with the Custody Order. In fact, the record shows that

6

after the rough start in April and May 2015, Mother's testing requests in June, July, and August 2015, were promptly received by Father, and upon his timely showing of negative test results, Mother reimbursed him for those tests. Because Father has not presented this Court with a record of Mother failing to make a meaningful and good faith effort to comply with the Custody Order, we have no basis to dismiss her appeal.

## B.   District Court's Contempt Findings

[¶19] Courts have both inherent and statutory authority to enforce their orders in domestic relations cases through civil contempt sanctions. *Shindell*, ¶ 8, 322 P.3d at 1273 (citing *Walker v. Walker*, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013)). The statutory authority reads:

> (b) A court having jurisdiction under W.S. 20-2-203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children. In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.

Wyo. Stat. Ann. § 20-2-204(b) (LexisNexis 2015).

[¶20]  Regarding the findings required to support a civil contempt order, we have said:

> A civil contempt order must be supported by clear and convincing evidence. *McAdam*, ¶ 14, 335 P.3d at 470; *Shindell*, ¶ 10, 322 P.3d at 1274.  Clear and convincing evidence is "evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Id*.  The elements of civil contempt are: "1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Id*. Once these elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply. *Id*.

*Bullock*, ¶ 17, 336 P.3d at 141.

7

[¶21] As to the third element of civil contempt, the failure to comply with an order, "the burden is to prove that the failure to comply was willful; not simply that the offending party merely failed to comply." *Meckem v. Carter*, 2014 WY 52, ¶ 20, 323 P.3d 637, 644 (Wyo. 2014). In order to find a willful violation, the order violated must be "clear, specific and unambiguous." *Greene*, ¶ 14, 153 P.3d at 951 (quoting *Crites v. Alston*, 837 P.2d 1061, 1069-70 (Wyo. 1992)).

[¶22] Using this framework, we consider the district court's contempt findings.

**1. Father's Alleged Contempt**

[¶23] Mother's show cause motion alleged that Father violated the Custody Order in a number of ways, all of which the district court rejected, but the only ground she pursues on appeal is her claim that Father violated the order by keeping his cell phone turned off. Mother asserts that Father did this so he could manipulate the dates and times that he received Mother's testing requests and allow time for any drugs he may have ingested to clear his system before testing. The district court rejected this claim after finding that Father kept his cell phone on and that it appeared that any delay in Father's receipt of Mother's drug testing requests in April and May 2015 was due to Mother sending her testing requests to multiple telephone numbers. Mother contends that the court's observation concerning the cause of any delay in Father receiving her request is pure speculation and the court therefore abused its discretion in denying her show cause motion. We disagree.

[¶24] Father testified that he bought a cell phone to be used only for receipt of Mother's drug testing requests, and Mother agreed in her testimony that on February 4, 2015, the day after the district court issued its oral ruling on custody, Father provided Mother with that telephone number. Father also testified that the telephone was always charged and turned on, that he checked it regularly for messages, and that he received Mother's April 6, 2015 request on April 9th, and her May 8, 2015 request on May 9th.

[¶25] Jennifer Donner, the nanny Father hired to care for his children, also provided testimony. She testified that one of her duties was to monitor the cell phone when Father was at work and to contact Father when any drug testing request was received, either by calling Father or going to his work site if he was out of cellular range. Ms. Donner verified that Father did not receive Mother's April 6th text message until April 9th and that he did not receive Mother's May 8th text message until late in the evening on May 9th.

[¶26] The district court found Father's testimony and that of Ms. Donner to be credible. The court observed:

8

> So the Court is more persuaded by the testimony of [Father] that he, with religiosity, attempted to paint by the numbers here and do exactly what was required of him to the point of setting up a dedicated phone line which, frankly, I think is an excellent idea, an excellent idea.
>
> * * *
>
> * * * The Court is persuaded by the evidence of Ms. Donner and [Father] that, again, they were just religious in seeing to it that that phone was checked regularly to make sure there were requests, perhaps, on there, motivated mainly by the fact that, I'm convinced, [Father] wanted to see his child, and so he wanted to do everything that was required of him. The Court's persuaded that he always kept the phone juiced up, that he always kept it paid up.

[¶27] Because the district court believed the testimony of Father and Ms. Donner, it rejected Mother's claim that Father should be held in contempt. It was only as an aside that the court observed that the delay in Father receiving Mother's text messages may have been attributable to Mother sending her April and May requests to multiple telephone numbers rather than to just the number provided by Father. The court commented that "maybe it took a while for the system to figure that out, I have no idea. But that's one distinction I can see in the evidence there, for what it's worth." In the court's order, it likewise commented on the cause of the delay, but made no definite finding:

> By making the principal telephone number a defunct number on the April and May requests, ***Mother appears to have caused a delay or issue with delivery*** on the wireless system, as the problem has not replicated itself when the principal number used was the telephone number provided by Father. (emphasis added).

[¶28] It is clear from the district court's written order and its oral ruling that the court denied Mother's show cause motion because it found Father and his evidence more persuasive, not because it found Mother may have caused the delay in the transmission of her text messages. "Our rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact." *McAdam v. McAdam*, 2014 WY 123, ¶ 26, 335 P.3d 466, 472 (Wyo. 2014) (citing *Olsen v. Olsen*, 2013 WY 115, ¶ 32, 310 P.3d 888, 895 (Wyo. 2013)). The district court simply believed that Father had his telephone charged and on at all times and was not doing anything to manipulate the timing of his receipt of Mother's messages. Giving these weight and credibility determinations their due deference, we can find no abuse of discretion in the court's denial of Mother's show cause motion.

9

## 2. **Mother's Alleged Contempt**

[¶29] The district court found Mother in contempt of court for willfully violating the Custody Order. The court concluded:

> Father has demonstrated by clear and convincing evidence that Mother willfully violated the Order by refusing to return the parties' minor child to Father's care on April 12, 2015, by refusing to reimburse Father for the costs of his April 10, 2015 drug test, and by refusing to return the parties' minor child to Father's care on May 10, 2015.

[¶30] During its oral ruling on Father's show cause motion, the district court explained its ruling. The court concluded that under the Custody Order, Mother's drug testing request was not effective until Father's receipt of the request. The court attributed the delay in Father's receipt of the April and May text messages to Mother but also found no willful intention in her conduct, commenting that he understood her explanation that she sent her April and May text messages to multiple telephone numbers only to ensure that Father received the messages. The crux of the court's finding of contempt was its conclusion that Mother had an obligation to verify when Father received her messages and to determine the reason for any delay in his receipt before denying his visitation. The court explained:

> Now I thought about this, when mom composed her messages, I don't believe that mom had ill intent when she composed the April and the May message at all. On the other hand, on the April message, when it turns out that the results are there at CASA on the 10th, and she knows that; to me, under the obligation to cooperate language, she has the obligation to get on the horn with dad and say "Well, what's wrong here? You're supposed to have this done within 24 hours, and I just got this." And the dad could respond "Well, gee, I just got the message." I think mom demonstrated that she wasn't prepared to do that, which only aids the Court in finding that she is in civil contempt of court.

[¶31] This reasoning was echoed in the district court's written order. The court made findings concerning the discrepancy between the dates of Mother's text messages and the dates of Father's receipt of those messages and concluded:

> Pursuant to the obligation to cooperate language in paragraph 8 of the Order, upon receiving the drug test results,

> Mother had a duty to contact Father and attempt to resolve the
> discrepancy. Mother failed to do so.

[¶32] We find insufficient support in the Custody Order for the district court's conclusion that Mother willfully violated the order. We agree that the Custody Order's drug testing requirement, as clarified by the district court's oral ruling on the drug testing requirement, is sufficiently clear to establish that a drug testing request is not effective until actual receipt of the request by Father.[3] Where we part company with the district court is in its conclusion that the Custody Order imposed an obligation on Mother to verify not only when Father received actual notice, but also to determine the reason for any delay in his receipt of the request.

[¶33] The Custody Order's drug testing provision contains no requirement that Mother take steps to both verify Father's receipt of her request and determine the cause of any delay in his receipt. The district court instead relied on the order's Paragraph 8 general cooperation provision to find this obligation. Subsection (b) of that provision directs that Mother and Father shall "[e]xercise discretion and cooperate with each other in exercising custodial and visitation rights so the best interest of the child is served." We agree with the district court that Mother did not conduct herself in keeping with this obligation when she unilaterally, with no discussion, disregarded Father's negative drug test in April 2015, denied him two weeks of visitation to which he was entitled under the Custody Order, and refused to reimburse him for the negative test. We cannot, however, find in Mother's conduct a willful violation of the Custody Order. To find a willful violation that warrants a contempt finding, the order violated must be "clear, specific and unambiguous." *Greene*, ¶ 14, 153 P.3d at 951. The Custody Order does not fit the bill. While the order makes a drug testing requirement effective only on Father's receipt of Mother's request and imposes an obligation on the parties to communicate with each other, it does not impose a clear obligation that Mother take steps to both verify receipt of her request and determine the reasons for any delay in Father's receipt.

[¶34] We also find it notable that in addition to the district court's above-quoted observation that Mother did not act with ill intent, the court also found no particular fault in Mother's belief that it was Father who caused the delay in his receipt of Mother's testing requests by failing to keep his telephone on. Although the district court ultimately

---

[3] We recognize that a court's written order controls over its oral ruling. *Capshaw v. WERCS*, 2001 WY 68, ¶ 9, 28 P.3d 855, 858 (Wyo. 2001) (quoting *Wheatland Cold Storage and Meat Processing, Inc. v. Wilkins*, 705 P.2d 316, 319 (Wyo.1985)) ("[A] court's signed written order takes precedence over a prior oral order."). Nonetheless, we interpret written orders using the same rules applicable to contract interpretation, and we may consider the context in which the order was issued and the circumstances surrounding its issuance in determining its meaning. *Glover v. Crayk*, 2005 WY 143, ¶ 10, 122 P.3d 955, 958 (Wyo. 2005). The Custody Order does not specifically state that Mother's drug testing requests are effective only upon receipt by Father, but the district court's oral ruling on the testing requirement clarified that Father had to have actual notice of the request before it became effective.

rejected that allegation, the court described the allegation as a "fair claim." Findings that Mother acted without ill intent and had fair concerns are difficult to reconcile with a finding of a willful violation. Because we find insufficient support in the record and the Custody Order for a finding that Mother willfully violated the Custody Order, we conclude that the district court erred in finding Mother in contempt.

[¶35] Although we find insufficient grounds for the district court's finding of contempt against Mother, the court certainly had authority to enforce its Custody Order and to remedy a violation of that order without issuing a contempt citation. *See* Wyo. Stat. Ann. § 20-2-203(a) (LexisNexis 2015) ("A court in this state which enters a custody order under W.S. 20-2-201 has continuing subject matter jurisdiction to enforce or modify the decree concerning the care, custody and visitation of the children as the circumstances of the parents and needs of the child require * * * ."). Regardless of whether Mother acted willfully, she denied Father two weeks of visitation to which he was entitled under the Custody Order, and she denied Father reimbursement to which he was entitled under the Custody Order for his April 2015 drug test. The district court properly remedied those violations of the Custody Order by granting Father two make-up weeks of visitation and ordering Mother to reimburse Father for the drug test. *See Bullock*, ¶ 29, 336 P.3d at 144 (reversing contempt finding against father but nonetheless upholding award of fees and costs to mother because she was required to bring action to enforce divorce decree). We thus uphold the court's grant of relief to Father.[4]

## CONCLUSION

[¶36] We find no error in the district court's finding that Father did not violate the Custody Order. We do find the court erred in finding Mother willfully violated the Custody Order, but we nonetheless uphold the court's granting of relief to Father because Mother's conduct, though not a willful violation of the Custody Order, did deprive Father of visitation and reimbursement of drug testing costs to which he was entitled under the Custody Order. Affirmed in part and reversed in part.

---

[4] As noted earlier, Mother did not appeal the order awarding Father his attorney fees, and that order is unaffected by our decision.