# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 73

APRIL TERM, A.D. 2013

_June 17, 2013_

AMY C. ROBERTS,

**Appellant**
**(Plaintiff),**

**v.**                                                   S-12-0224

STEVEN LOCKE,

**Appellee**
**(Defendant).**

_Appeal from the District Court of Albany County_
_The Honorable Jeffrey A. Donnell, Judge_

_Representing Appellant:_
> Wendy S. Ross and Mary T. Parsons of Parsons & Associates, P.C., Cheyenne, Wyoming

_Representing Appellee:_
> Megan L. Hayes and Allen Gardzelewski of Corthell and King, P.C., Laramie, Wyoming

_Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ._

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    Appellant Amy Roberts and Appellee Steven Locke divorced in mid-July of 2010. Among their marital assets was a beachfront property in Costa Rica. After a trial, the district court ordered the property sold and the proceeds divided, and later held Roberts in contempt for impeding the sale. She now appeals that order. We affirm.

## ISSUES

[¶2]    Roberts asks this Court to consider two questions, which we restate as follows:

> 1.    Did the district court have jurisdiction to order Roberts to convey the Costa Rican property to Locke so that he could sell it, with the proceeds of sale to be distributed as provided in the divorce decree?
>
> 2.    Did the district court abuse its discretion when it found Roberts in civil contempt of court?

In addition, Locke asks us to determine that Roberts lacked reasonable cause for her appeal, and to award him the costs and fees he has expended in responding.

## FACTS

[¶3]    On September 24, 2009, Roberts filed a complaint for divorce against Locke in the Second Judicial District Court for Albany County in Laramie, Wyoming. The parties are tenured professors at the University of Wyoming. Roberts asked the court to equitably divide the assets and debts she and Locke had accumulated during their twenty-three year marriage. Chief among those assets were a Smith Barney investment account, a plot of land and a house in Indiana, what had been the marital home in Laramie, and a beachfront property in Costa Rica, on which they had built a house and apartments. Their debts, including one against the Smith Barney account, largely related to their credit financing of the purchase and improvement of their real property.

[¶4]    In a pretrial statement, Locke proposed that the district court order the Indiana property sold, and require that the proceeds be used first to retire the debt on that property, and then to compensate him for his premarital investment in the property, with any remainder of the sale price to be divided evenly between the parties. He also asked that the decree allow him to retain the Laramie home and require him to pay the mortgage and other debt associated with it. He further proposed that the court order the Costa Rican property to be sold, require the proceeds to be used to pay off the Smith Barney debt related to that property, and then equally split the remainder of the proceeds from the

1

sale of the Costa Rican property and any equity left in the Smith Barney account between the parties.

[¶5]    Roberts argued in her pretrial statement that the court should award both the Indiana and Laramie properties to Locke and require him to pay the indebtedness associated with both of them.  She proposed that she be awarded the Costa Rican property, apparently free of any debt incurred in purchasing and improving it, suggesting that the following language be included in the decree:

> Defendant shall have no right, title, or interest in this property.  Plaintiff shall be solely and separately responsible for maintaining this property (to include but not limited to paying the caretakers to maintain the property in Plaintiff's absence) free of any financial responsibility of Defendant.

The Smith Barney account, and presumably the debt on that account attributable to the Costa Rican property, was to go to Locke under Roberts' proposal.  The parties were unable to come to agreement on a property division, and the divorce action proceeded to trial.

[¶6]    It is easy to understand why Roberts valued the beachfront home and apartments in Costa Rica, and why the district court ultimately viewed them as a suitable asset to be used to equitably relieve both parties of a considerable portion of their marital debt. Between 2001 and 2003, the parties borrowed money to purchase the Costa Rican property and build the home and apartments.  They spent approximately $200,000 but had reduced the debt against the property to approximately $133,581 by the time of their divorce.  Although the appraised value of the property at the time of the divorce trial is not reflected in the record, by 2011 it was valued at $460,376, leaving a substantial sum for debt reduction and division.

[¶7]    The district court generally adopted Locke's proposed distribution, used the Costa Rican property as the keystone of its property division order, and directed that it and the Indiana property be sold.  With respect to the latter, the court ordered the proceeds from that sale to be used to retire the debt on that property and to pay Locke for the value of his premarital interest in it.  Any remaining proceeds were to be equally divided between Roberts and Locke.  The court ordered that the proceeds of the sale of the Costa Rican property be used to pay off the indebtedness related to its purchase and improvement, including the Smith Barney debt, and to pay Roberts for the value of her one-half share of the equity in what had been the marital home in Laramie.  The parties were to equally divide any remaining equity in the Costa Rican property.  Once the Smith Barney debt was paid and Locke received credit for his premarital investment in that account, the remaining value of the stocks and bonds held in the Smith Barney account was to be divided evenly between Roberts and Locke.

[¶8]   On July 12, 2010, the district court entered a decree of divorce containing the property distribution just described.  The decree did not set a selling price the parties were required to accept for the Costa Rican property.  This is not uncommon, because parties often do not present accurate or current evidence which will permit a court to set a reasonable price during a divorce trial.  We cannot tell whether or not this was the case here, as we have no record of the original divorce other than the parties' pretrial pleadings, the court's decision letter, and the decree.  Beyond the possible lack of evidence, judges tend to assume that parties to a divorce will comply with court orders in good faith, and that their enlightened self-interest and the forces of the market will lead them to agree on a reasonable price.  Unfortunately, this does not always prove to be true.  In any event, Roberts did not appeal from the decree.

[¶9]   On August 19, 2011, Roberts received a show cause order informing her that Locke had asked the court to hold her in contempt for failing to cooperate in the sale of the Costa Rican property in violation of the divorce decree.[1]  The district court held a hearing on November 9, and issued an order on November 16 declining to hold Roberts in contempt.  However, the court found that the parties had received an offer of $550,000 on the property, and it instructed them to make a counteroffer not to exceed $640,000, and to accept any offer which equaled or exceeded $600,000.

[¶10]  Roberts did not seek review of the order requiring that a counteroffer be made and requiring acceptance of any offer over $600,000.  Approximately two weeks after the order was entered, she entered into a three-year lease of one of the Costa Rican apartments.  Two weeks later she entered into a second three-year lease of another apartment.  Locke was not a party to either of those lease agreements.[2]  Both agreements noted that Roberts would accept rent only in the form of in-person cash payments into what was apparently a Costa Rican bank account to which only she had access.

[¶11]  On March 7, 2012, Locke filed another motion for an order requiring Roberts to show cause why she should not be held in contempt of court for violating the district court's order of November 16, 2011.  Locke alleged that after several offers and counteroffers, he and Roberts received an offer to purchase the Costa Rican property for $600,000, which he attempted to accept.  Roberts, however, submitted another counteroffer of her own, increasing the amount of earnest money to be deposited by the prospective buyer from $10,000 to $15,000, shortening the due diligence period for

---

[1] Roberts responded with her own motion for an order to show cause as to why Locke should not be held in contempt for failing to pay health insurance and uncovered medical expenses, as well as for failing to return certain items of personal property, or for returning them in poor condition.  The resolution of that motion is not reflected in the record and is not material to this appeal.

[2] Neither party offers any explanation as to how one owner of a jointly held property can enter into a valid long-term lease in Costa Rica, but they both seem to assume that it can be done.

inspection of any documents or to deal with other issues related to the property from thirty to ten days, and informing the prospective purchaser that his right to occupy the property was subject to the two leases. Locke informed the court that the buyer let his unaccepted offer expire, and so the sale at $140,000 over appraised value was lost.

[¶12] On August 30, 2012, a month after a hearing on Locke's motion, the district court issued an order finding Roberts in civil contempt of court. The court determined that she had attempted to change the terms of the final purchase offer for no apparent reason, and that she had entered into the two leases without just cause or excuse. It concluded that she had thereby interfered with the sale of the property in deliberate and willful defiance of the court's earlier order. The court ordered Roberts to cure her contempt by conveying all of her interest in the Costa Rican property to Locke by August 31, 2012. Locke was to sell the property as required by the original decree, after which the proceeds of the sale would be divided in accordance with the provisions of the decree.

[¶13] Roberts moved for an extension of time to convey her interest in the property so that she could instead buy Locke out of it. Locke objected, contending that Roberts had never made him a good-faith offer, that she could convey her interest to him and still buy him out, and that her motion was interposed solely for purposes of delay. He also requested a hearing on Roberts' failure to cure her contempt by conveying the property, as she allegedly had not done so by September 4, 2012. The district court denied Roberts' motion for an extension to make the conveyance. The record does not reflect the disposition of Locke's motion relating to Roberts' alleged failure to convey the property. Roberts timely appealed the order holding her in contempt.

## STANDARD OF REVIEW

[¶14] This Court will not disturb an order holding a party in civil contempt in a domestic relations case absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion. We review questions of law *de novo*. *Greene v. Finn*, 2007 WY 47, ¶ 5, 153 P.3d 945, 948 (Wyo. 2007). In reviewing the exercise of a district court's broad discretion to sanction contumacious acts, we must determine whether the court reasonably could have concluded as it did. *Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010).

## DISCUSSION

**The Jurisdictional Question**

[¶15] For over a hundred years it has been settled black-letter law that a court lacks authority to directly determine and affect title to real property located outside the state in which the court sits. However, it is equally well-established that a court of equity having jurisdiction over a person may act indirectly upon that person's extraterritorial real estate

4

by ordering him or her to act or to cease to act in some particular way in relation to the property. That is, courts distinguish judgments calculated to affect title to property itself from orders directing owners subject to their jurisdiction to take certain actions concerning property located outside the jurisdiction. *Breitenstine v. Breitenstine*, 2003 WY 16, ¶ 26, 62 P.3d 587, 594 (Wyo. 2003); *Kane v. Kane*, 577 P.2d 172, 175-76 (Wyo. 1978). *See also Meima v. Broemmel*, 2005 WY 87, ¶ 65, 117 P.3d 429, 450 (Wyo. 2005); Sheldon R. Shapiro, Annotation, *Power of Divorce Court to Deal With Real Property Located in Another State,* 34 A.L.R.3d 962 (1970). A Wyoming court having personal jurisdiction over the parties in a divorce action may therefore order one of them to convey his or her interest in real property to the other, even though the property is in a foreign country. *Breitenstine,* ¶ 26, 62 P.3d at 594-95 (part of the property subject to the order was in the Bahamas).

[¶16] If this were not so, there would have to be ancillary divorce proceedings – much like ancillary proceedings in probate cases – in every state and foreign country in which parties to a divorce owned property. It is difficult to imagine the chaos, inconvenience, inconsistency, and jurisdictional issues that would result. On the other hand, a court with jurisdiction over the parties can effect an equitable distribution of property and enforce that distribution through the use of contempt sanctions, including incarceration pending compliance with its orders if necessary.

[¶17] Roberts ignores the above authorities and argues that the Wyoming divorce decree must yield to Costa Rican law. She refers the Court to Código Procesal Civil, arts. 47, 705 (Costa Rica). She contends that these prohibit Costa Rican courts from enforcing a foreign judgment relating to a matter over which those courts have exclusive jurisdiction, and that they in fact confer exclusive jurisdiction on Costa Rican courts to decide controversies relating to ownership and title to movable or immovable property located there.

[¶18] There is nothing in the record to suggest that Roberts ever presented this revelation to the district court so that it could be considered. Instead, she sought an award of the Costa Rican property through trial, and then participated in two post-decree hearings with no indication in the record that she ever contested the district court's power to distribute that property. Because she argues that Costa Rican law somehow deprived the district court of subject matter jurisdiction, we will reach the merits while expressing some skepticism that the contention actually implicates the district court's subject matter jurisdiction.

[¶19] Even if Roberts' representations regarding Costa Rican law are accurate, we fail to see how these claimed provisions differ from the rule in Wyoming, which provides that its courts have no authority to issue a judgment purporting to determine or directly affect title to real property located in another state or foreign country. Nor can we discern why those provisions of Costa Rican law would invalidate a Wyoming order requiring parties

to a divorce in this state to convey their foreign property in order to achieve an equitable distribution of marital assets. *Breitenstine*, ¶ 26, 62 P.3d at 594-95.

[¶20] Moreover, Roberts has not provided us with the actual text of the provisions, either in English or Spanish, and she directs us to no commentary or Costa Rican court decision construing those provisions. Those omissions alone are fatal to her argument.

[¶21] Under Wyoming Rule of Civil Procedure 44.1 and the comparable federal rule, neither Wyoming's courts nor those of the United States will take judicial notice of the laws of a foreign country. Consequently, litigants who wish to take advantage of allegedly applicable foreign law must plead and prove it or have their cases determined in accordance with the law of the forum court. *In re Sowerwine's Estate and Guardianship*, 413 P.2d 48, 51 (Wyo. 1966) (concerning Nicaraguan law), *overruled on other grounds by State ex rel. Klopotek v. Dist. Court of Sheridan Cnty.*, 621 P.2d 223 (Wyo. 1980); *In re Anselmi*, 52 B.R. 479, 490 (Bankr. D. Wyo. 1985).

[¶22] Wyoming statutes specify the proof of foreign law a litigant must provide. With respect to foreign written laws, a litigant must provide printed copies of those laws and show that they were published upon the authority of its government, or that they are in a form commonly accepted in that country's courts as evidence of the existing law. As to the unwritten or common law of a foreign country, the proponent must provide either admissible parol evidence or the books of reported cases adjudicated in that country's courts. Wyo. Stat. Ann. §§ 1-12-301 through 306 (LexisNexis 2011). Nothing presented to us indicates that a Costa Rican court would even exercise jurisdiction to distribute property owned by two non-resident parties going through a divorce in another country.

[¶23] Because Roberts has provided no proof of her assertions regarding Costa Rican law, we reject her argument that those laws deprived the district court of jurisdiction to order her to convey her interest in the Costa Rican property to Locke in their divorce. This result seems particularly appropriate in light of the fact that Roberts filed for divorce in Albany County and asked the district court to utilize its power to award her the property in Costa Rica, only questioning that court's authority to effect a property division when her efforts were unsuccessful.

**Abuse of Discretion**

[¶24] Roberts contends that the district court could not reasonably find from the evidence before it that she had committed a civil contempt by acting contrary to a previous court order. As already noted above, the record on appeal shows that after the court ordered the parties to sell their Costa Rican property, Roberts refused to accept an offer for $550,000, which was $90,000 above the appraised market value of the property. The district court evidently recognized that the decree did not specify the amount the parties had to accept, ordered them to make a counteroffer not to exceed $640,000 and to

accept any offer over $600,000 in an effort to clarify and implement its prior ruling. Roberts did not seek review of this decision.

[¶25] Because no transcript of the hearing that resulted in Roberts being found in contempt was provided, we are forced to glean what appear to be undisputed facts from the pleadings and orders in the record. Approximately two weeks after the order directing the parties to accept any offer of $600,000 or more, Roberts unilaterally entered into three-year leases on two of the apartments on the property without Locke's knowledge, thus encumbering it and perhaps making it less attractive to a prospective purchaser. On February 20, 2012, after a number of offers and counteroffers, the parties received a $600,000 offer on the property. Roberts immediately submitted an individual counteroffer which purported to accept the offered purchase price, but inexplicably increased the required earnest money by fifty percent and decreased the purchaser's due diligence period by two-thirds, effectively rejecting the offer. Roberts' counteroffer also advised the prospective purchaser that his right to occupy the property was subject to the two leases. The buyer let his offer lapse, and the district court held Roberts in contempt, presumably for interfering with the sale of the property in what was at the very least arguably deliberate and willful defiance of the court's earlier order relating to the disposition of the property.

[¶26] We use the word "presumably" because, as we have stated, we have only been provided a glimpse of the evidence which may have been before the district court, and that only to the extent it is contained in the court's orders, Locke's pleadings, and the documents submitted with those pleadings. While the district court held an evidentiary hearing before finding Roberts in contempt, Roberts did not provide a transcript of that hearing in the record on appeal, if indeed either of the parties had the hearing reported.

[¶27] We have long held that appellants must provide this Court with a record sufficient to allow adequate appellate review. When no transcript or any other proper substitute record of the facts of a case is included in the record on appeal, we presume that there were no irregularities in the district court's judgment, and that it was reasonably based on competent and sufficient evidence. *Golden v. Guion*, 2013 WY 45, ¶¶ 4-5, 299 P.3d 95, 96-97 (Wyo. 2013); *Chancler v. Meredith*, 2004 WY 27, ¶ 5, 86 P.3d 841, 842 (Wyo. 2004); *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo. 1996).[3] In compliance with this oft-stated rule, we conclude that the district court acted within the proper scope of its discretion in finding Roberts in contempt of court, and that it did not therefore abuse that discretion.

**Costs and Fees on Appeal**

---

[3] We have recently expressed our dismay over the number of cases coming to us without transcripts of what appear to be critical proceedings. *State v. Powell*, 2013 WY 56, ¶ 26, 300 P.3d 858, 864 (Wyo. 2013).

[¶28] Roberts' failure to present an adequate record to this Court has an additional consequence. Without such a record, this Court cannot conclude that she had reasonable cause for an appeal from the district court's discretionary contempt ruling. We come to the same conclusion with respect to Roberts' jurisdictional claim. That claim runs counter to long-settled law in this state, and her argument concerning what she contends is contrary Costa Rican law is at best superficial. She provided no pertinent authority to establish the specific language of the law on which she relies, to establish the proper meaning of that language, or to prove the extent to which Costa Rican courts have held it to be applicable to foreign *in personam* orders, if they have. Absent such authority, she has not marshaled a cogent argument establishing reasonable cause for her appeal in this respect.

[¶29] It is proper to award relief under Rule 10.05 of the Wyoming Rules of Appellate Procedure where an appellate brief lacks cogent argument and is devoid of pertinent authority to support a claim of error. *Gray v. Stratton Real Estate,* 2001 WY 125, ¶ 11, 36 P.3d 1127, 1129-30 (Wyo. 2001); *Amen, Inc. v. Barnard*, 938 P.2d 855, 858 (Wyo. 1997). Consequently, the Court will award Locke a reasonable amount to reimburse him for costs, attorneys' fees, and any damages suffered as a result of this appeal upon submission of a proper application. *Golden*, ¶ 7, 299 P.3d at 97; *Chancler*, ¶ 8, 86 P.3d at 843; *Stadtfeld*, 920 P.2d at 664.

## CONCLUSION

[¶30] Roberts has not shown that the district court abused its discretion in holding her in contempt of court, or that the court lacked jurisdiction to order her to convey her interest in the Costa Rican property to Locke. We therefore affirm and, for the reasons set out above, will award Locke reasonable costs, fees, and damages under W.R.A.P. 10.05. Locke shall submit an appropriate application to this Court within fifteen days from the filing and publication of this opinion.