# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 76

APRIL TERM, A.D. 2017

June 26, 2017

MANDI LYNN KLEINPETER, n/k/a
MANDI LYNN DeLEON,

Appellant
(Plaintiff),

v.                                                          S-16-0269

DEDRICK RAY KLEINPETER,

Appellee
(Defendant).

*Appeal from the District Court of Natrona County*
*The Honorable Catherine C. Wilking, Judge*

*Representing Appellant:*
        Wendy S. Owens, Casper, WY.

*Representing Appellee:*
        Dedrick Ray Kleinpeter, *Pro Se*, Casper, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Mandi Kleinpeter, n/k/a Mandi DeLeon (Mother), and Dedrick Kleinpeter (Father) divorced after having two children together.  About four months after entry of the Decree of Divorce, Father filed a motion for an order to show cause why Mother should not be held in contempt for failing to allow Father in-person and telephonic visits with the couple's children.  Following an evidentiary hearing, the district court found Mother in contempt of the Decree's provisions allowing Father reasonable visitation with the children and requiring that both parents make reasonable efforts to insure the children free access to and unhampered contact with both parents.  We affirm.

## ISSUES

[¶2]    Mother states the issues on appeal as follows:

> 1.      Did the District Court err in finding Appellant in civil contempt of court with regard to supervised visitation?
> 2.      Did the District Court err in finding Appellant in civil contempt of court with regard to telephonic contact?

## FACTS

[¶3]    Mother and Father were married on May 3, 2009 and had two children together: RMK, born in 2010, and JCK born in 2011.  On March 16, 2015, Mother filed a complaint for divorce, and on February 9, 2016, the district court entered a Decree of Divorce (hereinafter Divorce Decree or Decree).  The Decree stated that the parties generally agreed and stipulated that, among other facts:

> 5.      * * * [Mother] is a fit and proper person to have the legal and physical care, custody of the minor children of the parties; and it is in the children's best interests to be placed in the legal and physical custody of [Mother] with [Father] having rights of reasonable visitation as agreed by both parties upon reasonable notice with the initial six months of visitation to be supervised by a third party such as the Casper Family Connections paid for by [Father].

[¶4]    With regard to custody of the children, visitation, and the obligation to cooperate, the Decree ordered:

> 3.      That [Mother] is awarded the legal and physical custody of the parties' children * * * ; and that [Father] will be entitled to reasonable visitation upon reasonable notice

1

with the first six months of visitation to be supervised by a third party such as the Casper Family Connections paid for by [Father]. Following the successful completion of the supervised visitation [Father] can have visitation with reasonable notice for alternate weekends and alternate holidays. In order for visitation to be utilized [Father] must not utilize in any fashion alcohol or illegal/synthetic drugs or in any way improperly utilize drugs whether the drugs are prescribed to [Father] or not. [Father] will be responsible for any transportation costs in exercising his visitation.

* * * *

10. Obligation to Cooperate. Neither of the parents shall complain about or malign the other nor the others' family. Neither shall either directly or indirectly cause the child[ren] to lose respect for or alienate the affection of said child[ren] toward the other parent. The parents shall cast each other in the most favorable light before the child[ren] and shall recognize the great importance of the other's parent/child relationship. Either parent has the right to petition to enforce or revise this decree with regard to the care, custody, visitation and maintenance of the child[ren] as the circumstances of the parents and the benefit of the child[ren] requires in accordance with W.S. 20-2-201 through 20-2-204 and 30-2-311(d). Any breach of this instruction shall constitute a material violation of this order. Additionally, both parents shall:

* * * *

(b) Make every reasonable effort to insure free access of the child[ren] to and unhampered contact with both parents.

[¶5] On June 13, 2016, Father filed a motion for order to show cause in which he alleged that Mother had violated the Decree by denying reasonable visitation and by denying him access to the children by telephone. The district court entered an order to show cause, and Mother responded with her traverse, which stated, in part:

5. While [Father] wishes that visitation be supervised by SueAnn Tavener, LPC, it is in the children's best interest that visitation be supervised through Casper Family Connections as recommended in the Decree of Divorce. It is further in the children's best interest that [Father] not graduate to standard visitation until he has completed six months of consistent,

2

regular, supervised visitation through Casper Family Connections.

6. No specific visitation schedule was ordered, particularly regarding the six months of supervised visitation. There is no effective visitation schedule to be violated or enforced. [Father] cannot claim a violation of a non-specific order.

\* \* \* \*

9. [Mother] has not willfully violated this Court's Orders, and therefore the Motion for Order to Show Cause should be denied.

[¶6]   Following an evidentiary hearing, the district court entered an order holding Mother in contempt. The court concluded Father had proved by clear and convincing evidence that the Decree was an effective order directing visitation and requiring the parties to make every reasonable effort to insure free access of the children to and unhampered contact with both parents. The court further concluded Father had proved by clear and convincing evidence that Mother was aware of these Decree provisions, that she failed to comply with the provisions, and that her failure to comply was willful. The court's underlying findings were:

a. [Mother] permitted approximately six in-person visitations between [Father] and the children between March 2016 and early July 2016. Visitations took place at the Natrona County Public Library, [Father's] sponsor's home, Highland Park Community Church, a park at which a Juneteenth celebration was taking place, and the Eastridge Mall. [Mother] supervised some of the visitations; at others, she dropped the children off with [Father] without a clear understanding of who would be supervising the visitations.

b. At some point, [Mother] informed [Father] that she would no longer allow visitations except as supervised by Casper Family Connections.

c. [Father] has not been allowed to see the children since approximately July 3, 2016.

\* \* \* \*

e. In February or March, 2016, shortly after [Father] moved from the Therapeutic Community program to the Adult Community Corrections program at Caper Re-Entry Center, the parties reached an agreement whereby [Father] would have telephonic visitation with the children on Tuesdays, Thursdays, and Saturdays. The agreement was not reduced to a court order.

> f.	[Father] exercised some telephonic visitation with the children.
>
> g.	At some point, [Mother] stopped taking [Father's] phone calls and stopped returning his calls. [Father] has not been allowed to exercise telephonic visitation with the children since that point.

[¶7]	Based on these findings, the district court held Mother in contempt of court. It ordered:

> [Mother] may purge her contempt by allowing alternating weekend and alternating holiday visitation in accordance with pages 2-3, paragraph 3, of the *Decree of Divorce*, beginning the weekend following August 9, 2016. This date is chosen as it will be six months from the entry of the *Decree of Divorce*.

[¶8]	Mother timely filed a notice of appeal, which included a statement that the contempt hearing was not reported. Mother thereafter filed her proposed statement of the evidence and proceedings pursuant to W.R.AP. 3.03. Father filed no objection or proposed amendments to Mother's proposed statement, and on November 10, 2016, the district court entered a Statement of Proceedings Pursuant to W.R.A.P. 3.03. The district court's statement noted that Mother's proposed statement accurately reflected a portion of the parties' testimony but omitted portions on which the court relied in its ruling. The court detailed that testimony in its statement of the proceedings, and the record reflects no objection to the court's recitation.

## STANDARD OF REVIEW

[¶9]	We review civil contempt orders in domestic relations cases for the following:

> This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013). *See also Munoz v. Munoz*, 2002 WY 4, ¶ 6, 39 P.3d 390, 392 (Wyo. 2002); *Olsen v. Olsen*, 2013 WY 115, ¶ 33, 310 P.3d 888, 896 (Wyo. 2013). In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did. *Roberts*, ¶ 14, 304 p.3d at 120, citing *Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010).

4

*Waterbury v. Waterbury*, 2017 WY 11, ¶ 7, 388 P.3d 532, 534-35 (Wyo. 2017) (quoting *Shindell v. Shindell*, 2014 WY 51, ¶ 7, 322 P.3d 1270, 1273 (Wyo. 2014)).

## DISCUSSION

[¶10]  We have outlined the findings a district court must make to support a civil contempt order.

> A civil contempt order must be supported by clear and convincing evidence. *McAdam*, ¶ 14, 335 P.3d at 470; *Shindell*, ¶ 10, 322 P.3d at 1274. Clear and convincing evidence is "evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Id*. The elements of civil contempt are: "1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Id*. Once these elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply. *Id*.

*JLK v. MAB*, 2016 WY 73, ¶ 20, 375 P.3d 1108, 1113 (Wyo. 2016) (quoting *Bullock v. Bullock*, 2014 WY 131, ¶ 17, 336 P.3d 136, 141 (Wyo. 2014)).

[¶11]  With regard to the third element, that the contemnor disobeyed the order, the party asserting contempt must prove not only a failure to comply with the order, but also that the violation was willful. *JLK*, ¶ 21, 375 P.3d at 1113 (quoting *Meckem v. Carter*, 2014 WY 52, ¶ 20, 323 P.3d 637, 644 (Wyo. 2014)).  "In order to find a willful violation, the order violated must be 'clear, specific and unambiguous.'" *Id*. (quoting *Greene v. Finn*, 2007 WY 47, ¶ 14, 153 P.3d 945, 951 (Wyo. 2007)).

[¶12]  The district court found clear and convincing evidence to support each contempt element, but Mother has appealed only the court's ruling that "there was an effective court order for visitation."  She contends that the Divorce Decree lacked the specificity required to support a contempt finding and, in so arguing, points to this Court's decision in *IC v. DW*, 2015 WY 135, 360 P.3d 999 (Wyo. 2015).  Because *IC* was not a contempt appeal, we find Mother's reliance on its holdings to be misplaced under these circumstances.

[¶13]  *IC* was a paternity, custody, and visitation dispute, in which the father appealed a district court's order awarding custody to the mother as well as the court's visitation order.  *Id.* at ¶ 1, 360 P.3d at 1000-01.  We upheld the award of custody but remanded for a more specific visitation order, having concluded that the order, which directed that

father shall have at least monthly visitation and further directed that visitation should be "flexible," was insufficient to promote the parties' understanding and compliance. *Id.* at ¶ 21, 360 P.3d at 1005. In so holding, we observed that "[a] decree in which custody and visitation are disputed must provide more detail so that the parents each understand their obligations, and so the decree may be enforced by contempt sanctions should that regrettably become necessary." *Id.* We directed on remand that the district court enter a visitation order incorporating the following:

> • It should specify which weekends and holidays Father is to be allowed visitation.
>
> • The child is now more than 18 months old, having been born in 2013. Accordingly, the schedule must provide more detail concerning overnight visits, and in particular address visitation conditions and issues relating to transferring the child between the parents.
>
> • The schedule should provide specific dates and times for Father to communicate remotely with the child *via* Skype, FaceTime or similar means when he is in Washington and the child is in Jackson with Mother.
>
> • It should gradually provide more visitation as the child gets older, and provide a meaningful schedule until he reaches his majority. The schedule should include visitation at Father's home when appropriate, and allocate transportation costs and, if necessary, specify details of travel. It should address summer visitation for a period appropriate to the child's age.

*Id.* at ¶ 21, 360 P.3d at 1005.

[¶14] Mother contends that because the visitation terms in the Divorce Decree lack the specificity we ordered in *IC*, they are inadequate to support a contempt holding. This argument ignores the distinctions between *IC* and the case before us.

[¶15] First, in *IC*, custody and visitation were hotly contested and were complicated by the parties' geographical separation, with the mother living in Jackson, Wyoming, and the father living in Washington. *IC*, ¶ 3, 360 P.3d at 1001. Our concern with the lack of specificity in the visitation order was heightened "given the parties' acrimonious relationship and the distance between them." *Id.* at ¶ 21, 360 P.3d at 1005. In contrast, in the case presently before us, there is no indication that when the district court entered the Divorce Decree, it had before it parties or circumstances that would make the ordered visitation unworkable. In fact, the Divorce Decree indicated that the parties were

"generally agreeing and stipulating to the following facts and conditions," which included:

> [I]t is in the children's best interests to be placed in the legal and physical custody of [Mother] with [Father] having rights of reasonable visitation as agreed by both parties upon reasonable notice with the initial six months of visitation to be supervised by a third party * * * .

[¶16] More importantly, however, the present case comes to us in a different posture than the appeal in *IC*. Unlike in *IC*, we are not presented with a challenge to the entry of a visitation order. Certainly the visitation order in this case could have been, and perhaps should have been, more detailed with regard to both in-person and telephonic visitation. That is not, however, the question before us. The question here is whether the district court could reasonably conclude that the Divorce Decree was sufficiently clear and specific to find a willful violation by Mother. Given the Decree's provisions and the evidence the district court had before it, we answer that question in the affirmative.

[¶17] The Divorce Decree provisions in question directed:

> 3.      That [Mother] is awarded the legal and physical custody of the parties' children * * * ; and that [Father] will be entitled to reasonable visitation upon reasonable notice with the first six months of visitation to be supervised by a third party such as the Casper Family Connections paid for by [Father]. Following the successful completion of the supervised visitation [Father] can have visitation with reasonable notice for alternate weekends and alternate holidays. In order for visitation to be utilized [Father] must not utilize in any fashion alcohol or illegal/synthetic drugs or in any way improperly utilize drugs whether the drugs are prescribed to [Father] or not. [Father] will be responsible for any transportation costs in exercising his visitation.
>
> * * * *
>
> 10.      <u>Obligation to Cooperate</u>.    * * * [B]oth parents shall:
>
> * * * *
>
> (b)  Make every reasonable effort to insure free access of the child to and unhampered contact with both parents.

[¶18] The testimony on which the district court based its contempt ruling included the following:

7

a.     The Father was aware of the visitation ordered by the Court at the trial on September 11, 2015; but the written Decree was not presented to the Court by Mother's attorney until February of 2016, and he did not see his children until after the Decree was entered.

b.     The Father testified that he wasn't allowed phone contact until March of 2016, and he was allowed telephone contact with the children on Tuesdays, Thursdays and Saturdays at 7:30 p.m.   The Mother testified that she suggested the telephone contact and the Father was sporadic in calling the children.

c.     The Father testified that he wanted to visit with the children in-person, contacted Casper Family Connections to set up visitation, and was advised of the fees and costs associated with that service provider.

d.     The Father testified that he could not afford to use Casper Family Connections because they did not have a sliding-fee scale.   The Father then contacted Mercer House and Central Wyoming Counseling Center to see if he could arrange visitation with those service providers, as they both offered sliding fee scales.   Both of those service providers were available to supervise visitation.   The Father believed that Mercer House and Central Wyoming Counseling Center qualified as a "third party" who could supervise visitation under the Decree.

e.     The Father testified that he advised the Mother of the other service providers and continued to ask for visitation with his children.   The Mother allowed him to see the children six times between March and July of 2016.

* * * *

k.     The Father testified that the sixth time he saw the children, the Mother dropped the children off at the Eastridge Mall, and the Father drove the children to Mother's home after the visit was complete.

l.     The Father testified that after he returned the children from the Eastridge Mall visit, the Mother refused to afford him any visitation with the children, and he did not have contact with the children in any form as of July 3, 2016.

m.     The Mother testified that she complained to the Father about his boundaries and that his texts to her were inappropriate.

n.     The Mother admitted that she refused to allow the Father to have telephone contact with the children.

8

> o. The Mother admitted that she refused to allow visitation with the Father after July 3, 2016, unless it was supervised by Casper Family Connections.
>
> p. The Mother admitted that the children asked to see the Father during the times she was refusing visitation and telephone contact.

[¶19] With respect to in-person visitation, the Divorce Decree's visitation provision is clear on its face that Casper Family Connections was one but not the only party allowed to provide supervision for Father's first six months of visitation. Additionally, as we noted above, the requirement that an order must be clear, specific, and unambiguous to support a contempt finding is aimed at ensuring the charged violation was willful. *JLK*, ¶ 21, 375 P.3d at 1113. The record here shows that before Mother unilaterally discontinued Father's visits with the children, she had allowed visitation supervised by parties other than Casper Family Connections. Her conduct in allowing those visits is evidence that Mother understood the visitation terms, including the flexibility of the supervision requirement.

[¶20] The Decree's visitation provision did not require that a particular party or entity act as supervisor for Father's visits and no provision in the Decree allowed Mother to unilaterally discontinue Father's visitation. Based on the clear terms of the Decree and Mother's conduct, which reflected her understanding of the visitation terms, the district court could reasonably conclude that Mother willfully violated the Decree when she refused to allow Father visitation except as supervised by Casper Family Connections.

[¶21] With respect to telephonic visitation, Mother is correct that the Divorce Decree contains no provision specifically requiring such visitation. The Decree does, however, clearly require that each parent "[m]ake every reasonable effort to insure free access of the child[ren] to and unhampered contact with both parents." The children asked to see their father, and Father tried to have both in-person and telephonic visitation with them. Although the Decree does not specifically require telephone access, the district court could reasonably conclude that when Mother refused to allow Father telephonic or in-person visitation with his children, she willfully interfered with the children's access to Father in violation of this non-interference provision of the Decree.

## CONCLUSION

[¶22] The Divorce Decree's visitation and cooperation provisions were sufficiently clear and specific to support the district court's order holding Mother in contempt for her refusal to allow Father in-person or telephonic visitation with the couple's children. Affirmed.