2017 WY 112

**Joseph Gary FOWLES, Appellant (Plaintiff),**

v.

**Karen Raye FOWLES, Appellee (Defendant).**

S-17-0067

Supreme Court of Wyoming.

September 22, 2017

Representing Appellant: Joseph Fowles, Pro se, Cheyenne, WY.

Representing Appellee: Linda J. Steiner and Abigail E. Fournier of Steiner Law, LLC, Cheyenne, WY.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

HILL, Justice.

[¶1] Joseph Fowles (Husband) and Karen Fowles (Wife) were divorced by a decree entered August 17, 2015. In September 2015, Husband and Wife filed their first round of contempt motions, each alleging the other failed to meet certain obligations imposed by the divorce decree. The district court held Husband in contempt but found insufficient evidence to hold Wife in contempt. Although only Husband was found in contempt, the court ordered both parties to complete certain obligations. Neither party appealed the first contempt order.

[¶2] Within a few months of the district court's first contempt ruling, the parties filed a second round of contempt motions, each alleging the other violated obligations imposed by both the divorce decree and the court's first contempt ruling. The court again held Husband in contempt and found insufficient evidence to hold Wife in contempt. Hus-

band appeals, and finding no abuse of discretion in the district court's ruling, we affirm.

## ISSUES

[¶3] Husband presents five issues on appeal, which he states as follows:

I. Did the District Court err in not holding [Wife] in contempt for new damages to the Marital Home?

II. Did the District Court err in not holding [Wife] in contempt for delaying the sale of the home?

III. Did the District Court err in assessing immediate interest (penalty) due to contempt to the $50,000 dollars (sic) owed when [Husband] was not in contempt?

IV. Did the District Court err in not allowing evidence to be presented?

V. Did the District Court err in determining the value of the computer awarded to [Wife]?

[¶4] Wife states the issues on appeal more generally, asking whether the district court abused its discretion in ruling on the parties' contempt motions. She adds as a separate issue:

Should this Court certify that there was no reasonable cause for this appeal, that it was without merit, and that it was filed only to harass [Wife], delay resolution of the case, and add to the costs of the litigation, and that [Husband] failed to present a cogent argument, cite pertinent authority, or adequately cite to the record?

## FACTS

[¶5] On August 17, 2015, the district court entered a stipulated divorce decree, which divided the parties' real and personal property and assigned responsibility for the parties' individual and joint debts and other obligations. With respect to the parties' marital home, which was their only real property, the decree provided:

a. The parties own real property located at [address omitted].

b. [Husband] is awarded this real property as his sole and separate property.

c. [Husband] shall pay [Wife] $50,000.00 for the equity in the home by June 26, 2015.

d. [Wife] shall be allowed to live in the home until forty-five (45) days after she has received $50,000.00 for the equity in the home from [Husband]. [Husband] shall be responsible for the mortgage and any other expenses associated with the marital home, including all costs to refinance the home or have it sold.

[¶6] On September 3, 2015, Wife filed a motion for order to show cause (contempt motion) against Husband, with an amended version filed on September 22, 2015. Wife's amended contempt motion was a forty-seven paragraph motion alleging numerous violations of the divorce decree.

[¶7] On September 24, 2015, Husband responded to Wife's contempt motion and countered with his own contempt motion. Husband's contempt motion alleged that Wife, while in sole possession of the marital home, had intentionally damaged the home by: ripping wallpaper from the walls; removing portions of the fence; throwing couch cushions and other debris in the backyard; hoarding and throwing trash in the basement; and failing to mow the grass or change light bulbs. On October 5, 2015, Husband filed another contempt motion adding allegations that Wife violated the decree by disposing of all but five of his twenty model airplanes and by disposing of Husband's shop vac and shop tools.

[¶8] On November 13, 2015, the district court held an evidentiary hearing on the contempt motions, and on May 25, 2016, the court issued its order. The court observed that its ability to enforce certain of the divorce decree deadlines and requirements was complicated by the fact that some of the deadlines had passed before the divorce decree had been entered by the court, and some of the requirements had no deadline. The court found no willful violations with respect to any such decree provisions, but the court did find Husband had willfully violated other decree provisions, most notably the decree's requirement that Husband refinance or sell the marital home and pay Wife for her equity interest in the property. The

court found Wife "did not, for her part, take some of her obligations under the Decree as seriously as she should have," but it was unable to conclude that she had willfully violated the decree. The court's order noted that "[t]he Court must order compliance, and insure future compliance when formulating a remedy for contempt." The court then ordered, in part:

1. Here, weighing the behavior of both parties, it is obvious the house must be sold or refinanced and the $50,000.00 paid.

2. Overdue or unpaid obligations must be made up.

3. The proper order includes ninety (90) days to sell or refinance from the entry of this Order. If not sold or refinanced, the $50,000.00 will be subject to ten-percent (10%) interest until paid, in addition to which, the Court reserves the right to further sanction [Husband] for delay.

\* \* \* \*

5. [Wife], while not in contempt must vacate the home within forty-five (45) days of the entry of this Order to facilitate [Husband] being able to sell or refinance.

[¶9] Neither party appealed the district court's May 25, 2016 contempt order. On July 26, 2016, Wife filed a second contempt motion, alleging continuing violations of the divorce decree. Specifically, Wife alleged that Husband failed to make timely property settlement payments and failed to return a computer Wife was awarded under the decree.

[¶10] On August 22, 2016, Husband filed a *pro se* contempt motion against Wife. Husband alleged Wife violated the divorce decree by willfully damaging the marital home before vacating the home. The alleged damage included 274 cigarette burn holes in the carpet, wallpaper ripped off walls, ripped linoleum, damage to cabinets and shelves, damage to an awning, and damage to a gate. Husband further alleged that Wife violated the decree by interfering with Husband's attempts to sell the home and by removing items from the home that belonged to Husband or were otherwise required to be left with the home.

[¶11] On December 8, 2016, Wife amended her contempt motion to specify additional alleged violations of the decree and filed a supporting brief that detailed her alleged damages. With regard to the $50,000.00 payment to which Wife was entitled for her equity in the marital home, Wife alleged:

The [May 25, 2016 contempt order] required [Husband] to refinance and/or sell the parties' marital home and pay [Wife] $50,000.00 within ninety (90) days or pay ten-percent (10%) interest. [Husband] sold the house after the 90-day deadline, but only paid [Wife] $20,016.16, which was the entire amount of the proceeds from the sale. The proceeds were reduced in part because the closing costs covered unpaid mortgage payments (owed by [Husband]), $3,000.00 worth of cleaning costs, and other fees, repairs, closings, and realtor costs. [Husband] was also responsible, per the Decree, to pay the mortgage on the marital home until the closing. He did not make the mortgage payment in October 2016 so the amount of the house payment was taken out of [Wife's] equity. A check in the amount of $20,016.16 was sent to [Wife] on November 1, 2016. [Husband] also did not pay the $5,000.00 ($50,000.00 * 10%) due in interest. [Husband] owes [Wife] $34,983.84 ($50,000.00 + $5,000.00—$20,016.16).

[¶12] On December 9, 2016, the district court held an evidentiary hearing on the contempt motions. The court issued an oral ruling at the close of the hearing, followed by a written order on December 29, 2016. With respect to Husband's contempt motion, the court found the evidence in dispute as to when and how the marital home was damaged and was otherwise not persuaded by the evidence that Wife had damaged the home or violated the divorce decree or the court's first contempt order. With respect to Wife's contempt motion, the court found Husband had willfully failed to comply with his obligations under both the divorce decree and the first contempt order. The court ruled that Husband owed Wife a total of $47,269.78, which included $1,500.00 for the computer awarded to Wife and $34,983.84 for Wife's equity in the marital home. Per Wife's request, the court ordered that amount reduced to a judgment.

[¶13] On January 27, 2017, Husband filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶14] We review civil contempt orders in domestic relations cases as follows:

This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013). *See also Munoz v. Munoz*, 2002 WY 4, ¶ 6, 39 P.3d 390, 392 (Wyo. 2002); *Olsen v. Olsen*, 2013 WY 115, ¶ 33, 310 P.3d 888, 896 (Wyo. 2013). In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did. *Roberts*, ¶ 14, 304 p.3d [P.3d] at 120, citing *Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010).

*Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶ 9, 397 P.3d 189, 192 (Wyo. 2017) (quoting *Waterbury v. Waterbury*, 2017 WY 11, ¶ 7, 388 P.3d 532, 534-35 (Wyo. 2017)).

## DISCUSSION

[¶15] Husband states five issues on appeal, each identifying an alleged error in the district court's contempt ruling. Those alleged errors can be summarized as: 1) error in not holding Wife in contempt for damages to the marital home; 2) error in not holding Wife in contempt for delaying the sale of the home; 3) error in assessing interest against Husband's delinquent $50,000.00 equity payment to Wife; 4) error in excluding evidence; and 5) error in determining the value of the computer awarded to Wife. Intermingled throughout his briefing, Husband adds two arguments: 6) he did not willfully violate the divorce decree or the first contempt order and therefore his violations do not support a contempt finding; and 7) the district court erred in applying the doctrine of *res judicata*.

[¶16] We consider these alleged errors and the district court's exercise of its discretion against the law governing contempt rulings.

A civil contempt order must be supported by clear and convincing evidence. *McAdam v. McAdam*, 2014 WY 123, ¶ 14, 335 P.3d 466 at 470; *Shindell [v. Shindell*, 2014 WY 51], ¶ 10, 322 P.3d [1270] at 1274 [ (Wyo. 2014) ]. Clear and convincing evidence is "evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Id.* The elements of civil contempt are: "1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order." *Id.* Once these elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply. *Id.*

*Kleinpeter*, ¶ 10, 397 P.3d at 193 (quoting *JLK v. MAB*, 2016 WY 73, ¶ 20, 375 P.3d 1108, 1113 (Wyo. 2016)).

### A. Husband's Claims of Error

### 1. Damage to Marital Home

[¶17] The district court rejected Husband's claim concerning damage to the marital home, stating:

* * * There is a dispute in the evidence as to when certain damage was done. There is no evidence whatsoever as how that affected the saleability of or the final sale price of the house, what work may or may not have been done even in kind by [Husband] in order to sell the house.

[¶18] On the question of damage to the marital home, the evidence presented at the contempt hearing included testimony and photographs both parties submitted as exhibits. Neither party designated the admitted exhibits as part of the record on appeal, and the exhibits are therefore not available for our consideration. With respect to the testimony concerning damage to the home, Wife testified and Husband's friend Randall Craft testified. Wife testified that she did not damage the home. Mr. Craft testified concerning damage he saw in the home, but he had no knowledge of who caused the damage. Husband did not testify regarding the damage, and no testimony was presented on the cost

to repair any damage or how the damage affected the value of the home.

[¶19] Given the evidence at the contempt hearing, we cannot say that the district court acted unreasonably in denying Husband's claim regarding damage to the marital home. Husband failed to meet his burden of proof, and we therefore find no abuse of discretion in the district court's ruling.

## 2. Alleged Acts to Delay Sale of Marital Home

■ [¶20] Husband next contends that the district court erred in rejecting his claim that Wife acted to delay the sale of the marital home. Husband's claim has two components, one that Wife denied Husband's realtors access to the home, and two that Wife failed to return the house keys within forty-five days of the first contempt order. The district court concluded that although Husband did not receive the house keys until two days after the forty-five deadline, Wife had vacated the home within the required forty-five days and Husband did not show any harm from the delay in receiving the keys. We again find no error in the district court's ruling.

[¶21] The divorce decree originally allowed Wife to stay in the home until forty-five days after Husband paid her the required $50,000.00 for her equity interest in the home. The court's first contempt order effectively modified that provision by requiring Wife to vacate the home within forty-five days of the contempt order's entry. These are the only provisions of either the divorce decree or the first contempt order that impose any requirements on Wife with respect to her occupancy of the marital home.

[¶22] With regard to the contempt order's forty-five day deadline for Wife to vacate the home, Husband again failed to prove a violation. Wife testified that she vacated the home two days before the deadline, and that testi-

mony went unrefuted. Given that the only evidence presented to the district court showed no violation of the forty-five day deadline, we find no error in the district court's finding that Wife vacated the home as required.

[¶23] The record also supports the district court's finding that Husband was not harmed by the delay in receiving the house keys. Husband did not testify to any harm or otherwise submit evidence that the two-day delay in his receipt of the keys interfered with a prospective sale. [1] More fundamentally, though, neither the divorce decree nor the first contempt order addressed when or how Wife was to deliver the house keys to Husband. In the absence of a clear and specific directive on the delivery of the keys, Wife's actions or inactions with regard to that delivery could not support a contempt finding. *See Kleinpeter,* ¶ 11, 397 P.3d at 193 (contempt may only be found if a violation of a clear and specific order is shown).

[¶24] The district court did not specifically address Husband's claim that Wife delayed the property's sale by denying access to the home by his realtors, but that lack of a specific finding does not undermine the court's contempt ruling. Neither the divorce decree nor the first contempt order required that Wife allow access to the home during her occupancy. Again, in the absence of a clear and specific order requiring Wife to allow realtor access to the home, Wife's actions or inactions with regard to such access to the home could not support a contempt finding.[2]

## 3. Interest Assessment

■ [¶25] The district court found that Husband violated the first contempt order because he failed to either sell or refinance the marital home within ninety days of the contempt order and failed to pay Wife the

---

1. Wife testified, again unrefuted, that she gave the house keys to her attorney on the same date she vacated the home, two days before the forty-five day deadline. Thus, in addition to the lack of evidence of harm, there is no evidence Wife intended to withhold the keys from Husband.

2. Even if Wife's alleged denial of access to the home were intended as a defense to Husband's

failure to meet his own deadlines, which is not how Husband presented the allegation, the record would not support Husband's claim. Wife provided unrefuted testimony that during her occupancy, she denied access to the home on only one occasion, when she had a medical emergency, and she otherwise allowed access.

$50,000.00 equity payment to which she was entitled under the divorce decree. Because Husband missed this deadline, the court held him in contempt and awarded interest on the $50,000.00 obligation. Husband contends that the district court erred in finding that Husband missed the ninety-day deadline because he did sell the home within ninety days of obtaining possession. He further contends that ninety days is not enough time to sell or refinance a home and if the district court were going to award interest it should have calculated that interest based only on the outstanding amount owing on the $50,000.00 equity payment. We reject these arguments.

[¶26] First, the contempt order directed that Husband was to sell or refinance the marital home and make the $50,000.00 equity payment to Wife within ninety days of the order's entry, not within ninety days of Husband regaining possession of the home. Husband does not dispute that he did not meet that deadline, and the district court therefore did not err in finding Husband violated the order.

[¶27] We also reject Husband's argument that he should not have been charged interest on the equity payment because ninety days is not enough time to sell a home. The first contempt order set the ninety-day deadline, and Husband did not appeal that order. The first contempt order is final and Husband may not revisit its requirements through his appeal of the second contempt order. *See Cook v. Swires*, 2009 WY 21, ¶ 10, 202 P.3d 397, 400 (Wyo. 2009) ("[W]hen a party fails to timely appeal an appealable order, he cannot raise the issues decided in the order in a subsequent appeal.").

[¶28] With respect to Husband's argument that interest should have been charged only against the amount owing after Husband's $20,016.16 payment to Wife on November 1, 2016, this is an argument Husband did not present to the district court. Husband asked the district court to waive interest on the equity payment based on Wife's alleged acts to delay sale of the home. He did not ask the district court to reduce the amount of interest based on the amounts he had paid against the $50.000.00 equity payment. We generally do not consider arguments on appeal that were not presented to the district court. *Crofts v. State ex rel. Dep't of Game and Fish*, 2016 WY 4, ¶ 19, 367 P.3d 619, 624 (Wyo. 2016). We have explained:

> "This court has taken a dim view of a litigant trying a case on one theory and appealing it on another.... Parties are bound by the theories they advanced below." *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004) (citation omitted). There is a sound basis for our general rule "that we will not consider claims raised for the first time on appeal." *Id.* We follow this rule because "it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp.*, 2015 WY 22, ¶ 28, 343 P.3d 783, 791 (Wyo.2015) (quoting Bredthauer v. TSP, 864 P.2d 442, 446–47 (Wyo.1993)).

*Crofts*, ¶ 19, 367 P.3d at 624.

[¶29] Because Husband's argument concerning the amount against which interest should have been charged is a new argument on appeal, and Husband admittedly failed to sell or refinance the marital home and pay wife her equity interest within the ninety-day deadline set by the first contempt order, we find no abuse of discretion in the court's contempt finding and award of interest.[3]

---

**3.** The district court calculated the interest owed using Wife's calculation, which set the amount at $5,000.00 ($50,000.00 * 10% interest). We have recognized that an "interest rate" is "[t]he percentage of an amount of money which is paid for its use for a specified time," and is "[c]ommonly expressed as an annual percentage rate (APR)." *Halling v. Yovanovich*, 2017 WY 28, ¶ 29, 391 P.3d 611, 621 (Wyo. 2017) (quoting Black's Law Dictionary 813 (6th ed. 1990)). Given that interest is generally expressed and calculated as an annual percentage rate, and a year had not passed from the contempt order's deadline, it is not clear how the $5,000.00 in interest was calculated. Husband did not, however, challenge this calculation before the district court or this Court, and we therefore need not address the court's interest calculation. *See Montoya v. Navarette-Montoya*, 2005 WY 161, ¶ 4, 125 P.3d 265, 268 (Wyo. 2005) (declining to address issues not raised by the appellant because Court "would run the risk of deciding the appeal on an issue

### 4. Exclusion of Evidence

[¶30] Husband next contends that the district court erred in ruling against the admission of evidence offered by Husband. In so arguing, Husband fails to cite to the particular rulings to which he objects, fails to cite legal authority in support of his argument, and fails to otherwise present cogent argument in support of his claim. We therefore do not address his arguments. *See Greer v. Greer*, 2017 WY 35, ¶ 34, 391 P.3d 1127, 1135 (Wyo. 2017) ("[W]e will not consider issues which are not clearly defined or supported by proper citation or cogent argument.").

### 5. Determination of Computer's Value

[¶31] Husband contends that the district court erred in awarding Wife $1,500.00 to compensate for Husband's failure to return to Wife a computer she was awarded under the divorce decree. We again find no abuse of discretion in the district court's ruling.

[¶32] Wife submitted evidence that the computer she was awarded under the divorce decree had a value of $2,835.00. Husband offered no admissible evidence to establish a different value.[4] The district court made a downward adjustment to Wife's estimate, explaining that the computer Wife had been awarded was an older computer, and further explaining:

> * * * There is no way to make [Wife] whole as to that computer in any event because one of the things she really wanted was not the mechanisms and the software, but the items stored, and there was no way to order that.

[¶33] The district court had a difficult valuation question to address in remedying Husband's contempt, and we cannot say its solution was unreasonable. We therefore find no abuse of discretion in the court's award to Wife for the computer.

### 6. Willfulness of Husband's Violations

[¶34] Husband contends that the district court erred in finding him in contempt for failing to make required payments to Wife and sell or refinance the marital home because conditions beyond his control delayed his ability to sell the home and he did not have the financial ability to make the required payments. We find no error in the district court's rejection of this defense.

[¶35] A party's inability to comply with an order is a defense to contempt. *Secrest v. Secrest*, 781 P.2d 1339, 1341-42 (Wyo. 1989) (recognizing inability to afford ordered insurance policies as defense to contempt). Our law is also clear, however, that once the party charging contempt establishes that the charged party knowingly violated a clear and specific order, the burden shifts to the party charged with contempt to show he or she was unable to comply. *Kleinpeter*, ¶ 10, 397 P.3d at 193 (quoting *JLK*, ¶ 20, 375 P.3d at 1113). The burden was therefore on Husband to establish that his violations were not willful but were instead due to his inability to comply. Husband presented no such evidence. In particular, he presented no evidence of his financial resources and obligations, and no evidence concerning the housing market and the influences on the timing of his sale of the marital home.[5] In the

---

with respect to which the appellee had not been notified and thus had inadequate defense opportunities.").

4. Husband offered a written estimate of $475 from a local computer firm, but that evidence was excluded as hearsay.

5. Husband contends that he attempted to submit evidence of his budget and the district court rejected that evidence. That is not accurate. During the preliminary portion of the contempt hearing when the court was asking the parties' their positions and determining the disputed items, the following exchange occurred between the court and Husband:

> THE COURT: I understand your position. I'm not agreeing or disagreeing yet. I just need to understand your position. As to the toll bills, did you manage to pay them?
> [HUSBAND]: No, sir.
> THE COURT: Why not?
> [HUSBAND]: Again, if you look at my budget, which they have—
> [THE COURT]: I'm not going to look at your budget.
> [HUSBAND]: I don't have the money, sir.
> [THE COURT]: Okay.

After this portion of the hearing, the court gave both parties an opportunity to present evidence. Husband offered no admissible evidence of his

absence of such evidence, Husband's burden of proof was not met, and we can find no abuse of discretion in the district court's ruling.

### 7. *Res Judicata* Rulings

[¶36] Husband contends that the district court erred in applying the doctrine of *res judicata*. In so arguing, however, Husband points to no specific application of the doctrine to which he objects, cites no pertinent authority, and provides no cogent argument. We therefore do not consider this argument further. *See Greer*, ¶ 34, 391 P.3d at 1135.

### B. Wife's Request for Sanctions

[¶37] Wife asks this Court to certify that there was no reasonable cause for Husband's appeal and award sanctions and attorney fees to Wife pursuant to W.R.A.P. 10.05(b). Although Husband's brief was inadequate in many respects, Husband did designate relevant portions of the record for our review, including a transcript of the evidentiary hearing. We have summarily rejected Husband's claims for which no cogent argument was presented, but we decline to certify that there was no reasonable cause for Husband's appeal. *See Carbaugh v. Nichols*, 2014

WY 2, ¶ 23, 315 P.3d 1175, 1180 (Wyo. 2014) (quoting *Welch v. Welch*, 2003 WY 168, ¶ 13, 81 P.3d 937, 940 (Wyo. 2003)) ("Rule 10.05 sanctions are generally not available for challenges to discretionary rulings, unless 'an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.' ").

### CONCLUSION

[¶38] The record supports the district court's ruling on the contempt motions of Husband and Wife, and we therefore find no abuse of discretion in the court's ruling. Although Husband's brief was inadequate in many respects, and we have as a result given no consideration to certain of his arguments, we decline to certify his appeal as one without reasonable cause and deny Wife's request for sanctions. Affirmed.

---

financial resources and obligations or his ability

to sell or refinance the home.